No. 88-311

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN THE MATTER OF THE PETITION
FOR POST-CONVICTION RELIEF OF
JAMES M. BRODNIAK,

        Petitioner and Appellant,

   -vs-

STATE OF MONTANA,

        Respondent.

APPEAL FROM: District Court of the Fourth Judicial District,
             In and for the County of Missoula,
             The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        William Boggs argued, Missoula, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Dorothy McCarter argued, Asst. Atty. General, Helena
        Robert L. Deschamps, III, County Attorney, Missoula,
        Montana

Submitted: June 6, 1989

Decided: September 14, 1989

Filed:

_____
               Clerk

Justice Fred F. Weber delivered the Opinion of the Court.

James M. Brodniak appeals from an order of the Fourth Judicial District Court, Missoula County, denying his petition for post-conviction relief. We affirm.

We phrase the issues as follows:

1. Did the Montana Supreme Court apply the proper harmless error test during its review of Mr. Brodniak's criminal trial?

2. Does the harmless error analysis applied by the Montana Supreme Court in its review of Mr. Brodniak's criminal trial contravene the due process clause requirement that guilt be proven beyond a reasonable doubt?

3. As a matter of law, can evidence be found to be overwhelming for purposes of harmless error analysis where one or more members of the appellate tribunal are not convinced that it is?

A detailed description of the events leading to James M. Brodniak's conviction of sexual intercourse without consent can be found in our opinion considering his direct appeal, State v. Brodniak (1986), 221 Mont. 212, 718 P.2d 322. Therefore, we only briefly describe the facts here.

In the early morning hours of May 10, 1984, D.P. left a Missoula bar with James M. Brodniak. The couple purchased a six-pack of beer and proceeded to drink and talk in a dormitory parking lot at the University of Montana. At trial, D.P. testified that, after a while, she asked Mr. Brodniak to take her home. Instead, he took her outside of Missoula to Pattee Canyon, locked the car doors, grabbed her hair, and forced her to engage in sexual acts. Mr. Brodniak, on the other hand, testified that he took D.P. to Pattee Canyon because she suggested that they go to a wooded area where she could to to the bathroom. He claimed that they then engaged

in consensual sexual acts. He admitted, however, that toward the end of the incident he became violent, pulling D.P.'s hair and choking her.

After the incident, D.P. was examined by a medical doctor. The doctor testified that the injuries suffered by D.P. were probably not a common result of consensual sexual intercourse. A nurse at the hospital observed that a "gross amount" of hair came out while D.P. combed her hair. The bureau chief of the Montana Criminalistic Laboratory testified that several long hairs found in Mr. Brodniak's car belonged to D.P. and that most of her hair had been pulled from her head with painful force.

The psychologist who examined D.P. testified that she had an IQ of approximately 78. He also testified that her psychological condition was consistent with all of the symptoms of rape trauma syndrome (RTS). In addition, he gave statistical testimony on the percentage of false accusations in rape cases and testified that he did not believe that D.P. was malingering.

After a four-day trial, Mr. Brodniak was convicted by a jury of the charge of sexual intercourse without consent. He was designated a dangerous offender and sentenced to 20 years in the Montana State Prison.

In Brodniak, we affirmed the conviction. In our opinion we discussed the admissibility of RTS testimony and concluded that, although RTS testimony is generally admissible, it was error for the State's expert witness to testify as to his belief that D.P. was not malingering and to the statistical percentages of false accusations. We stated that such testimony was "improper comment on the credibility" of D.P. Brodniak, 221 Mont. at 222, 718 P.2d at 329. We held, however, that the admission of such testimony constituted only harmless error because the State's evidence against Mr.

3

Brodniak and his own admissions were overwhelming. Brodniak, 221 Mont. at 223, 718 P.2d at 329.

We also determined that three other errors were committed during the criminal trial, but refused to reverse the conviction, holding that each of the additional errors did not prejudice Mr. Brodniak. Mr. Brodniak's petition for rehearing, which was summarily denied, was based on the doctrine of cumulative error, not on the issue of the standard of review employed in determining harmless error.

On January 16, 1987, Mr. Brodniak filed a habeas corpus petition in the United States District Court for the District of Montana, Missoula Division, Brodniak v. Risley, cause no. CV-87-29-M, alleging that the Montana Supreme Court had applied an incorrect test in its determination of harmless error. In response, the State alleged that Mr. Brodniak had not exhausted his state remedies because he had not presented that precise question to the state courts for review. Consequently, the U.S. District Court dismissed the habeas corpus proceeding without prejudice.

Mr. Brodniak then filed a petition for post-conviction relief with the Fourth Judicial District, Missoula County. After a hearing, the District Court denied the petition. Mr. Brodniak appealed to this Court.

I

Did the Montana Supreme Court apply the proper harmless error test during its review of Mr. Brodniak's criminal trial?

Mr. Brodniak contends that the psychologist's comment on D.P.'s credibility violated his right to jury trial guaranteed by the Sixth Amendment to the Constitution of the United States. He argues that expert testimony regarding a witness's credibility invades the province of the jury, amounting to a Sixth Amendment violation. Mr. Brodniak contends

4

that the federal test of harmless error, rather than the state test, must therefore be applied to his conviction, citing Chapman v. California (1967), 386 U.S. 18, 21, 87 S.Ct. 824, 826-827, 17 L.Ed.2d 705, 709.

Mr. Brodniak cites United States v. Azure (8th Cir. 1986), 801 F.2d 336, to support his contention that his Sixth Amendment right was violated. It is true that in Azure the Eighth Circuit held that, in a trial involving a sex crime against a minor, a pediatrician's comment on the believability of the complaining witness constituted reversible error. That court however, made no reference to the Sixth Amendment. Rather, its analysis centered on the Federal Rules of Evidence. In a more recent case the Eighth Circuit explicitly stated that the propriety of expert testimony on general patterns of credibility among children reporting sexual abuse is essentially a matter of state law. Adesiji v. Minnesota (8th Cir. 1988), 854 F.2d 299, 300. Research has disclosed no cases holding that an expert's comment on witness credibility violates the Sixth Amendment. Rather, other courts have analyzed this type of error pursuant to rules of evidence, and by applying a state harmless error test. See, e.g. Tevlin, 715 P.2d at 341-342; People v. Oliver (Colo. 1987), 745 P.2d 222, 225; State v. Chul Yun Kim (N.C. 1986), 350 S.E.2d 347, 352.

In Montana, an error of state law will be deemed harmless "unless the record shows that the error was prejudicial." Section 46-20-701, MCA. "The test of prejudicial error requiring reversal is whether there is a reasonable possibility the inadmissible evidence might have contributed to the verdict." State v. Gray (1983), 207 Mont. 261, 268, 673 P.2d 1262, 1266; State v. Gray (1983), 202 Mont. 445, 449-450, 659 P.2d 255, 257; State v. LaVe (1977), 174 Mont. 401, 407, 571 P.2d 97, 101.

Mr. Brodniak devotes considerable argument to the federal harmless error test. We note that the federal harmless error test is essentially the same as that above enunciated for Montana. The United States Supreme Court stated the test for federal constitutional error in Fahy v. Connecticut (1963), 375 U.S. 85, 86-87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171, 173. The Court later restated this test in Chapman, noting however, that it did not change the Fahy test:

> There is little, if any, difference between our statement in Fahy v. Connecticut about "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our Fahy case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

Chapman, 386 U.S. at 24.

The essential question is whether there is a reasonable possibility that the inadmissible evidence might have contributed to the conviction.

Before discussion of this issue, we first note that Mr. Brodniak is asking this Court to reconsider an issue which was already decided in the original appeal of Brodniak where this Court stated:

> This Court, however, will not reverse a judgment of conviction for harmless error, and the question as to whether a particular error is harmful or harmless depends on the facts of the case under review. (Citation omitted.) In the instant case we hold that the admission of Walters' testimony, above quoted, was harmless error. A review of the record of this case reveals that the physical evidence against Brodniak and his own admissions that he

6

> resorted to violence were so overwhelming that admission of the RTS testimony did not affect his substantial rights.

Brodniak, 221 Mont. at 223, 718 P.2d at 329.

The overwhelming evidence rule is one method used by this Court to ascertain whether there is a reasonable possibility that the inadmissible evidence contributed to the verdict. State v. McKenzie (1980), 186 Mont. 481, 533, 608 P.2d 428, 458, cert. denied, 449 U.S. 1050 (1980); accord, Tevlin v. People (Colo. 1986), 715 P.2d 338, 342. Also, when assessing the prejudicial effect of an error, this Court will examine the totality of the circumstances in which the error occurred. See Gray, 207 Mont. at 268, 673 P.2d at 1266. If the error involves erroneously admitted evidence, we will not single out that one item of evidence to evaluate it in isolation. To do so could magnify the prejudicial effect of the error beyond its actual impact on the verdict, leading to reversals for mere technical violations of evidentiary rules.

Mr. Brodniak urges that the evidence in this case is not overwhelming either from a factual or a legal standpoint. His legal argument on this issue will be addressed in Issue III. Factually, he contends that the evidence is equally as consistent with defendant's theory of the case (which was that the sexual acts were consensual, but that defendant subsequently became violent) as it is with the prosecution's theory. This is the key point of Mr. Brodniak's argument with which we disagree.

This is not a case where the complaining witness's story is uncorroborated. Overwhelming evidence--both physical and testimonial--supports D.P.'s story. First, the evidence with regard to the tearing out of D.P.'s hair overwhelmingly demonstrated the use of force. The chief of the crime lab testified that most of the hairs found in the car and the

7

large ball of hair retrieved from D.P.'s scalp had been pulled from her head with painful force. He testified that most of the strands of hair had extended roots still attached, indicating that these hairs were extracted violently. The ball of hair was introduced into evidence. The attending nurse testified that, while D.P. combed her hair, a "gross amount" of hair came out and her scalp appeared to be tender. Second, D.P. suffered a tear one inch in length in her anus, a fact clearly inconsistent with consensual relations. Third, the examining physician's testimony established that D.P. had blood in and around her vagina, on her underwear and that the vaginal area still remained sore at the time of the examination. In response the defendant attempts to argue that he became violent only after they had engaged in consensual sexual intercourse. The foregoing evidence clearly is not consistent with consensual intercourse and establishes violent acts on the part of the defendant. We will not set forth the rest of the evidence including the testimony of D.P. which supports the conviction. Our careful review of the record reveals that the evidence overwhelmingly supports the verdict that Mr. Brodniak was guilty of sexual intercourse without consent. We hold there is no reasonable possibility that the psychologist's testimony contributed to the jury's finding that Mr. Brodniak was guilty of the crime of sexual intercourse without consent.

Mr. Brodniak makes an extensive argument with regard to the burden of proof according to the different tests. We conclude that it is unnecessary to discuss that argument because the previously described evidence submitted by the State is overwhelming and this Court has concluded that there is no reasonable possibility that the error contributed to the verdict.

## II

Does the harmless error analysis supplied by the Montana Supreme Court in its review of the defendant's criminal trial contravene the due process clause requirement that guilt be proven beyond a reasonable doubt?

Mr. Brodniak's claim rests on the erroneous assumption that the state harmless error analysis somehow lowers the requisite level of proof necessary to meet the standard of "guilty beyond a reasonable doubt." As stated earlier, the Montana test requires that there be no reasonable possibility that the error contributed to the verdict before it can be declared harmless. We hold that in Brodniak, there was no contravention of the due process requirement that guilt be proven beyond a reasonable doubt.

## III

As a matter of law, can evidence be found to be over-whelming for purposes of harmless error analysis where one or more members of the appellate tribunal are not convinced that it is?

In Brodniak, one member of our seven-member Court dissented from the majority opinion. Brodniak argues that, as a matter of law, evidence cannot be overwhelming for purposes of harmless error analysis where one or more members of the appellate tribunal are not convinced that it is. However, unanimity among the appellate tribunal has never been a prerequisite to a finding of harmless error when using the overwhelming evidence test, even when the test is used to determine the magnitude of constitutional error. See State v. Powers (1982), 198 Mont. 289, 645 P.2d 1357 (one justice dissenting from harmless error determination); State v. Dess (1979), 184 Mont. 116, 602 P.2d 142 (one justice dissenting); Milton v. Wainwright (1972), 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1; (four justices dissenting); and Harrington v.

9

California (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (three justices dissenting).

Although we have referred to some federal cases, our analysis and our holding in this opinion are based upon our analysis of Montana's statute defining harmless error and our case law interpreting that standard. Our opinion therefore is based on independent and adequate state grounds.

We affirm the District Court's denial of Mr. Brodniak's petition for post-conviction relief.

_____
                          Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
        Justices

10

Justice William E. Hunt, Sr., dissenting.

I dissent. The State bore the burden of proving beyond a reasonable doubt that the complaining witness did not consent to sexual intercourse with the defendant. To bolster its case, the State solicited testimony regarding the credibility of the complaining witness. Because of the potentially tremendous impact of this testimony, I cannot join the majority's conclusion that the error did not contribute to the jury verdict.

Whether an error is harmless depends on a number of factors, each of which should be carefully analyzed by the reviewing court. These factors include:

1) the nature of the error;

2) the importance of the erroneously admitted evidence to the State's case; and

3) the presence or absence of corroborating untainted evidence.

Cf. Delaware v. Van Arsdall (1986), 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (listing factors to be considered in determining harmlessness of error involving Sixth Amendment right of confrontation); Satterwhite v. Texas (1988), ___ U.S. ___, 108 S.Ct. 1792, 100 L.Ed.2d 284 (psychiatrist's testimony in violation of Sixth Amendment right to counsel was not harmless when the testimony regarding defendant's dangerous propensity was critical to sentencing, when only one psychiatrist testified on the issue and when the State placed significant weight on the testimony).

The nature of the error committed in this case directly implicated the ultimate issue to be determined at trial, that is, whether the complaining witness consented to sexual intercourse with the defendant. Thus, the expert's testimony regarding the credibility of the complaining witness improperly invaded the province of the jury. Furthermore,

- 11 -

the testimony was material to the State's case. The State actively solicited the testimony and the State relied upon it in closing. Moreover, the untainted evidence corroborated not only the State's case, it corroborated the defendant's theory of the case as well, that is, that the violent acts did not occur until after a consensual sexual encounter.

The overwhelming evidence test used in this opinion places the majority in the uncomfortable position of factfinder, forcing the majority to reweigh and, to some extent, mischaracterize the evidence. For example, the physician who examined the complaining witness testified that, although not common, her condition could possibly have resulted from consensual sexual relations. The majority, however, claims that her condition was "clearly inconsistent" with consensual intercourse.

By concentrating solely on the weight of the evidence and ignoring the nature of the error and the error's importance to the State's case, the majority examines the impact of the error in a vacuum. The issue before the jury was whether the complaining witness engaged in consensual sexual relations with the defendant. To reach a verdict, the jury weighed the credibility of the witnesses. Among the evidence the jury had before it was the testimony of a highly qualified expert witness who asserted that he believed that the complaining witness was credible. This testimony was solicited by the State and extensively relied upon by the State in closing. Under these circumstances, I cannot agree with the majority that, beyond a reasonable doubt, the expert testimony did not contribute to the jury verdict.

I would remand the case to the District Court for a new trial.

William E. Hunter
Justice

- 12 -

Mr. Justice John C. Sheehy, dissenting:

I concur in the dissent of Justice William E. Hunt, Sr.

_____
                    Justice