NO. 91-211

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1991**

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

RICHARD COPE and ROSA DICKSON,
a/k/a ROSA COPE,

        Defendants and Appellants.

FILED

OCT 30 1991

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fourteenth Judicial District,
In and for the County of Musselshell,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John L. Pratt; Ask & Pratt, Roundup, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General; Matthew F.
Heffron and Barbara C. Harris, Assistants, Helena,
Montana
Vicki Krause, Musselshell County Attorney, Roundup,
Montana

Submitted on Briefs:  September **19, 1991**

Decided:  October 30, 1991

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On November **28,** 1989, the State filed an Information in the District Court of the Fourteenth Judicial District in Musselshell County charging defendants Richard and Rosa Cope (a/k/a Rosa Dickson) with one count each of Possession of Dangerous Drugs and Possession of Dangerous Drugs With Intent to Sell. The State also charged Richard Cope with Felony Assault. The case was tried by the District Court without a jury on September 27-28, 1990. The court found Rosa Cope guilty of Possession of Dangerous Drugs With Intent to Sell. The court found Richard Cope guilty of both Possession of Dangerous Drugs With Intent to Sell and Felony Assault. The Copes appeal. We affirm.

The issues are:

1. Did the District Court err in denying the Copes' motion to suppress because the judge who issued the search warrant failed to comply with the "four corners" rule?

**2.** Did the District Court err in denying the Copes' motion to suppress based on the alleged overbreadth of the search warrant?

**3.** Did the District Court err in denying the Copes' motion to suppress based on the State's failure to leave the search warrant documents with the issuing judge until the search warrant was executed?

**4.** Did the District Court err in denying the Copes' motion to suppress based on the State's alleged failure to serve the search warrant on the Copes at the time of the search?

*5.* Did the District Court err in finding Richard Cope guilty of felony assault?

*6.* Did the District Court err in sentencing Richard Cope, who suffers from physical and mental disabilities, to Montana State Prison?

In September **1989,** FBI agent Carl Zarndt received an anonymous tip about marijuana growing south of Roundup, Montana. Agent Zarndt, who mistakenly believed the location to be in Golden Valley County, called Golden Valley County Sheriff Fred Cougill. Sheriff Cougill told Zarndt that the location was in Musselshell County and later relayed the tip to Musselshell County Sheriff Brian Neidhardt. On September **14, 1989,** Sheriff Neidhardt called Zarndt to confirm the tip and learned that the marijuana was near Fort Hall.

The next day Sheriff Neidhardt and Deputy Sheriff Rick Seidlitz rented a plane and flew over the Fort Hall area. Sheriff Neidhardt had concentrated on drug enforcement for 15 of his **18** years in law enforcement and had training and experience in aerial surveillance. Based on this training and experience, Sheriff Neidhardt had no doubt that plants he observed during the flight were marijuana plants.

After the flight, Sheriff Neidhardt checked the location he had seen from the air on a county map. He and Deputy Mike Thomas then drove out to the property and observed the marijuana plants

3

again through binoculars. Sheriff Neidhardt noted that the plants were quite close to the residence on the property.

Sheriff Neidhardt and Deputy Thomas returned to Roundup to get a search warrant. The sheriff called the county land classifier for a legal description of the property and learned that it was tract BJ-7 on Section 6, Township 6N, Range 26E. Sheriff Neidhardt then supplied the Musselshell County Attorney's Office with a property description for use in preparing a search warrant application.

The warrant application contained the following property description:

> A tannish colored framed dwelling located at 23 Harshman Road, by the junction of Shortcut Road and Harshman Road, more particularly described as BJ West 1/2 of NE, SW, Section 6, Township 6, Range 26, Musselshell County, Montana.

This is not the description Sheriff Neidhardt received from the land classifier. The land classifier's testimony at the suppression hearing established that the discrepancy may have resulted from unfamiliarity with legal property descriptions by either Sheriff Neidhardt or the county attorney's typist.

The warrant application also contained the following statement of probable cause:

> Sheriff Brian Neidhardt and Deputy Sheriff Rick Seidlitz flew over the Bull Mountains in Musselshell County on September 15, 1989, at approximately 12:00 o'clock Noon, and observed the residence of Rosa Dickson where what appeared to be marijuana growing on the South side of the residence [sic]. At approximately 1:30 p.m. on this same date, Sheriff Brian Neidhardt drove to Shortcut Road and

4

>observed with binoculars, at approximately 200 yards,
>what appeared to be marijuana plants.

Sheriff Neidhardt took this warrant application to District Court Judge Roy Rodeghiero, who placed the sheriff under oath and discussed the entire situation with him. Judge Rodeghiero issued a search warrant containing the property description reprinted above and commanding a search of all "vehicles, outbuildings, houses, and surrounding property" at that location. The sheriff did not leave the warrant application with Judge Rodeghiero.

Sheriff Neidhardt and several deputies then returned to the Dickson property to execute the search warrant. As the sheriff and Deputy Seidlitz approached, they heard loud music coming from a Jeep parked near the house. Deputy Seidlitz approached from the passenger side of the Jeep while Sheriff Neidhardt approached from the driver's side. Richard Cope was sitting in the driver's seat with the driver's side door open. When Sheriff Neidhardt identified himself, Cope reached down to his right, picked up a pistol, and began to swing it counterclockwise across his body toward Neidhardt. The sheriff knocked the pistol from Cope's hand while it was still pointing toward the front of the Jeep.

The authorities then approached the house and ordered everyone out. Rosa Cope and Dr. James Cope, Richard's father, came out. Sheriff Neidhardt gave Rosa Cope a copy of the search warrant. The officers handcuffed Richard, Rosa, and Dr. Cope and then proceeded to search the property. The search produced a number of weapons,

some drug paraphernalia, and approximately 35 pounds of marijuana. Dr. Cope was neither arrested nor charged.

On August 23, 1990, the Copes moved to suppress the search results. The Copes disqualified Judge Rodeghiero because they wanted to have him testify at their suppression hearing. A suppression hearing was held on September 11, 1990, and the motion to suppress was denied on September 13, 1990.

The Copes were found guilty of Possession With Intent to Sell after a trial on September 27-28, 1990. Richard Cope was also convicted of Felony Assault. The court sentenced Rosa Cope to five years at Montana State Prison with all but 30 days in the county jail suspended on conditions. The court sentenced Richard Cope to ten years for Possession With Intent to Sell, and ten years for Felony Assault, with the sentences to run concurrently, and with eight years suspended on conditions. The court added a consecutive two-year sentence enhancement to Richard Cope's sentence for his use of a dangerous weapon in the assault.

## I

Did the District Court err in denying the Copes' motion to suppress because the judge who issued the search warrant failed to comply with the "four corners" rule?

The Copes cite a long line of Montana cases, including *State v. Van Voast* (Mont. 1991), 805 P.2d 1380, 48 St.Rep. 160, for the proposition that the issuing judge cannot go beyond the "four

corners" of the warrant application to find probable cause to search a suspect's property. The Copes claim the probable cause statement in the warrant application was insufficient and that the issuing judge must have gone beyond the application to find probable cause. Specifically, they argue that the warrant application did not allege that Sheriff Neidhardt had any training or experience in marijuana identification. The Copes conclude that Judge Rodeghiero could not find probable cause without finding that his affiant could identify marijuana on sight and that the warrant application was fatally flawed without this information.

We disagree. The cases relied on by the Copes involve tips by informants which were relied upon to establish probable cause. *See, e.g., State v. Hendrickson* (1985), 217 Mont. 1, 701 P.2d 1368. This case does not require the usual analysis involving informant tips because in this case a law enforcement officer acting in his official capacity personally observed marijuana plants on two separate occasions. The same officer signed the warrant application and swore to its accuracy in front of the issuing judge. Questions of informant reliability and credibility are irrelevant because the county sheriff does not require the same accreditation as an unknown informant. We hold that *under the circumstances of this case* an allegation of personal observation by a law enforcement officer was sufficient to establish probable cause.

## II

Did the District Court err in denying the Copes' motion to suppress based on the alleged overbreadth of the search warrant?

The Copes argue that the District Court should have suppressed the search results because the search warrant incorrectly described a much larger piece of land than the tract on which they lived. The property description should have read "Tract **BJ-7,** W½ of **NE** SW, Section **6.**" This would have directed the authorities to the west half of the northeast quarter of the southwest quarter-section of Section **6.** Instead, the property description read "BJ West ½ of NE, SW, Section **6.**" **A** literal reading of this erroneous description would have led the authorities to the west half of the northeast quarter-section and all of the southeast quarter-section of Section **6.** The Copes believe this error merits suppression.

In *State v. Ballew* **(1973), 163** Mont. **257, 261, 516** P.2d **1159, 1161-62,** we said:

> *The warrant must designate the premises* to *be searched and contain a description so specific and accurate as to avoid any unnecessary or unauthorized invasion of the right of privacy. To this end it should identify the property in such manner as to leave to the officer **no** discretion as to the premises to be searched.* [Emphasis in original.]

(Quoting *State **ex rel.** King v. Dist. Court* **(1924), 70** Mont. **191, 198, 224** P. **862, 865).** In *Ballew,* we found that the warrant was overly broad because it directed the authorities to search two cabins located in a particular area that in fact contained three cabins. *Ballew,* **516** P.2d at **1162.**

This case does not present that problem.  Here, notwith-standing the erroneous property description as to tract number and section location, the warrant directed the authorities to "23 Harshman Road, by the junction of Shortcut Road and Harshman Road."  There was only one tract of land at 23 Harshman Road.  The authorities had no discretion as to which tract to search, and the Copes do not allege that any of the evidence offered against them was recovered from beyond the bounds of this tract.  Nor do they deny living at "23 Harshman Road."  We hold that the search warrant was not overly broad.

## III

Did the District Court err in denying the Copes' motion to suppress based on the State's failure to leave the search warrant documents with the issuing judge until the search warrant was executed?

Section 46-5-204, MCA (1989), provided:

> The application on which the warrant is issued shall be retained by the judge but need not be filed with the clerk of the court or with the court, if there is no clerk, until the warrant has been executed or has been returned "not executed."

The authorities did not leave the warrant application with Judge Rodeghiero and they did not file it with the clerk of court until September 21, six days after they executed the search warrant.  The Copes argue that this delay merits suppression of the search results.

The State responds that the delay in filing the warrant application did not result in substantial prejudice to the Copes. Section **46-5-103(3)**, MCA **(1989)**, provided that "[n]o search and seizure, whether with or without warrant, shall be held to be illegal as to a defendant if . . . any irregularities in the proceedings do not affect the *substantial rights* of the accused." (Emphasis added.) The State notes that the purpose of § **46-5-204,** MCA **(1989)**, is to protect "the person being searched from harmful publicity." Section **46-5-204,** MCA Annotations, Commission Comments. The Copes' interest in protection from harmful publicity was at most merely collateral to the substantial development of their defense. We do not believe this oversight by Sheriff Neidhardt affected their substantial rights.

However, the Copes cite *State* v. *Tropf* **(1975),** 166 Mont. **79, 530** P.2d **1158,** for the proposition that failure to leave the warrant application with the issuing judge is **"prejudicial** error." We disagree with their interpretation of our holding in that case. The defendant in *Tropf* challenged the search warrant on the grounds that: (1) the issuing police judge lacked the necessary jurisdiction; and (2) the authorities did not leave the application with the issuing judge. *Tropf,* **530** P.2d at **1160.**

We held that police judges lacked jurisdiction to issue search warrants and that the warrant was therefore void. *Tropf,* **530** P.2d at **1161.** At that point all subsequent discussion of the warrant

10

paperwork became *dicta*.  We noted perfunctorily and in passing that the district court in that case did not err in condemning the State's failure to leave the warrant application with the issuing judge.  We did not consider the impact of the "substantial rights" requirement of § 46-5-103(3), MCA (1989), (then codified as § 95-717, RCM (1947)).  The words **"substantial"** and **"prejudicial"** do not even appear in our discussion of the issue.

We have never since relied upon the *dicta* in Tropf to suppress search results because the authorities failed to leave the warrant application in the proper place.  We decline to do so now.  We hold that the District Court did not err in denying the Copes' motion to suppress based on Sheriff Neidhardt's failure to leave the warrant application with Judge Rodeghiero.

**IV**

Did the District Court err in denying the Copes' motion to suppress based on the State's alleged failure to serve the search warrant on the Copes at the time of the search?

Section 46-5-206, MCA (1989), required the authorities executing a search warrant to exhibit it and leave a duplicate copy on the property.  The Copes and their father all deny either seeing an original warrant or receiving a duplicate copy.  They conclude that this justifies suppression of the search results.  We note that they cite no cases *so* holding.

Furthermore, the evidence at the suppression hearing supports an inference that Sheriff Neidhardt did exhibit the warrant and leave an original on the property. Sheriff Neidhardt testified as follows:

Q     Where did you put the copy?

A     I don't recall if I -- obviously I might have
      -- if I gave it to her, I had to put it in her
      hand, but I showed it to her.  I showed her
      the original, and I had a copy there.

Q     What did you do with the copy?

A     I would have handed a copy to her then.

Q     Do you recall putting it in her hand?

A     I would have had to.  I don't recall exactly,
      but I would have had to; because I gave her a
      copy at that time.  I know I wouldn't have
      thrown it on the ground, so I obviously put it
      in her hand.

This testimony is far from unimpeachable, but perfection is not required.  The Copes bore the burden of proof on this issue. Section 46-13-302(4), MCA (1989).  In finding that the Copes did not discharge that burden, the District Court said:

> Sheriff Neidhardt testified that he placed a copy of the
> Search Warrant in Rosa Dickson's hand after showing her
> the original.  He is well trained and experienced in
> these matters and had or has no reason to lie about it.
> The Defendants' testimony on the point is, however, more
> suspect, whether from the motive of personal interest or
> from the confusion and excitement of the event.  The
> Court must resolve contradictory testimony and does so,
> accepting the Sheriff's testimony as true.

In the past, we have used two different standards of review for evidence presented at suppression hearings.

At first, we expressed the standard as whether the trial court's findings were "clearly against the weight of the evidence." *In re R.P.S.* (1980), 188 Mont. 317, 613 P.2d 999; *State v. Blakney* (1979), 185 Mont. 470, 605 P.2d 1093; *State v. Lenon* (1977), 174 Mont. 264, 570 P.2d 901; *State v. Smith* (1974), 164 Mont. 334, 523 P.2d 1395; *State v. Chappel* (1967), 149 Mont. 114, 423 P.2d 47; *State v. white* (1965), 146 Mont. 226, 405 P.2d 761.

Our more recent decisions express the standard as whether the record contains "substantial credible evidence" to support the trial court's findings. *State v. Kim* (1989), 239 Mont. 189, 779 P.2d 512; *State v. Beach* (1985), 217 Mont. 132, 705 P.2d 94; *State v. Camitsch* (1981), 626 P.2d 1250, 38 St.Rep. 563; *State v. Allies (Allies II)* (1980), 190 Mont. 475, 621 P.2d 1080; *State v. Davison* (1980), 188 Mont. 432, 614 P.2d 489; *State v. Allies (Allies I)* (1979), 186 Mont. 99, 606 P.2d 1043.

In one case, we cited both standards. *State v. Grimestead* (1979), 183 Mont. 29, 598 P.2d 198.

In *Walden v. state* (Mont. 1991), ___ P.2d ___, 48 St.Rep. 893, we considered the appropriate standard of review for judge-made findings of fact in *civil cases*. We cited Rule 52(a), M.R.Civ.P., and held that we will not overturn the trial judge's findings of fact unless they are "clearly erroneous." *Walden*, 48 St.Rep. at 896. The issue in *Walden* was whether the trial court had improperly

13

refused a challenge for cause during jury selection. We adopted the "clearly erroneous" standard of review, even though we noted that challenges for cause do not fit squarely within the literal parameters of Rule 52(a). *Walden*, 48 St.Rep, at 896. Our purpose in that case was to begin clarifying the standards of review applicable to judge-made findings of fact and to settle on one expression of the standard that would be applicable to all future findings of fact.

We extend our rationale in *Walden* to the District Court's findings of fact regarding the suppression hearing in the instant case. We see no reason to maintain a different standard of review in criminal cases than we apply to civil cases, as long as we continue to require the State to prove each substantive element of the criminal offense beyond a reasonable doubt at trial on the merits. In fact, the "clearly erroneous" formulation is the one applied to suppression hearings by the Ninth Circuit. *See U.S.* v. *Elliott* (9th Cir. 1990), 893 F.2d 220. Therefore, from this point forward we will not overturn a District Court's findings of fact regarding suppression hearing evidence unless those findings are clearly erroneous.

Upon reviewing the evidence presented at the suppression hearing in this case, we are unable to say the District Court's findings of fact regarding that evidence are clearly erroneous. We hold that the District Court did not err in finding that Sheriff

14

Neidhardt exhibited the original warrant and left a duplicate copy on the Copes' premises.

## V

Did the District Court err in finding Richard Cope guilty of felony assault?

Section **45-5-202(2)(b)**, MCA **(1989)**, provided:

> **A** person commits the offense of felony assault if he purposely *or* knowingly causes **.** **.** reasonable apprehension of serious bodily injury in another by use of a weapon **. . . .** [Emphasis added.]

Richard Cope argues that he was trying to surrender his pistol to Sheriff Neidhardt and that he did not intend to cause apprehension of serious bodily harm. He concludes that the District Court erred in finding that he possessed the necessary mental state for felony assault.

Cope has confused the mental states necessary under the **1973** Criminal Code. Section **45-2-101(33)**, MCA **(1989)**, provided:

> **[A]** person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is *aware* of his conduct or that the circumstance exists. A person acts knowingly with respect to the *result* of conduct described by a statute defining an offense when he is *aware that it is highly probable that such result will be caused by his conduct.* When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is *aware of a high probability of its existence*. Equivalent terms such as "knowing" or "with knowledge" have the same meaning. [Emphasis added.]

15

Thus, it was not necessary for Cope to intend to cause apprehension. He committed the offense if he was aware that his conduct would probably cause that result.

The record contains evidence from which the District Court could infer that Cope acted knowingly. He reached down to his right, picked up a pistol, and began swinging it toward Sheriff Neidhardt. He testified that he held it by only two fingers, but Sheriff Neidhardt and Deputy Seidlitz testified that he had his right hand around the grip. The District Court found Neidhardt and Seidlitz more credible and chose to believe their testimony rather than Cope's.

Cope also argues that any apprehension experienced by Sheriff Neidhardt was unreasonable because Cope never pointed the pistol directly at the sheriff. Cope cites § 45-5-201(1)(d), MCA (1989), which raises a presumption of intent to cause apprehension when one person points a firearm at another. We do not believe that the converse is necessarily true. It is unreasonable to infer that the necessary state of mind did not exist simply because Cope did not succeed in pointing the firearm at his victim.

Sheriff Neidhardt knocked the pistol out of Cope's hand while it was pointing toward the front of the Jeep. Cope cannot now take advantage of Neidhardt's quick reflexes and argue that he never had a chance to point the gun at his victim. Neidhardt testified that he thought Cope would shoot him. Deputy Seidlitz, who was "covering" the incident, perceived Cope's act as threatening and

16

actually began tightening the slack in his rifle trigger. Seidlitz testified that this was the closest he had come to shooting a suspect in his entire law enforcement career.

In the past, we have expressed the standard of review on criminal bench trials as whether there is "substantial evidence to support the defendant's guilt beyond a reasonable doubt." *State v. Duncan* (1979), 181 Mont. 382, 387, 593 P.2d 1026, 1029-30; *State v. Longacre* (1975), 168 Mont. 311, 313, 542 P.2d 1221, 1222. For the reasons enumerated in Part IV of this opinion, we believe that the correct standard of review to be applied to all judge-made findings of fact is whether they are "clearly erroneous." Based on our review of the record in this case, we do not believe that the District Court's findings that Cope acted knowingly and that Sheriff Neidhardt reasonably apprehended serious bodily harm are clearly erroneous. Therefore, we hold that the record contains sufficient evidence to support Richard Cope's conviction for felony assault.

VI

Did the District Court err in sentencing Richard Cope, who suffers from physical and mental disabilities, to Montana State Prison?

Richard Cope argues that prison is an inappropriate environment for him because he suffers from certain physical and mental disabilities. Several years ago, Cope suffered severe head

injuries in a motorcycle accident. He now has an acrylic plate in his skull and suffers from an organic personality disorder attributable partly to the injury and partly to years of substance abuse. He presented medical testimony at his sentencing hearing that prison would be dangerous for him because the plate in his skull renders him easily susceptible to injury and because his personality disorder will make him susceptible to manipulation by other inmates.

We believe this is a question of sentencing equity, rather than sentencing legality. We review sentences for legality only. *State v. Hurlbert* (1988), *232* Mont. 115, *756* P.2d 1110. The standard of review on sentence legality is whether the district court abused its discretion. *State v. Lloyd* (1984), *208* Mont. 195, 199, *676* P.2d 229, 231. We find no such abuse here, since Cope's sentence is well within the statutory limits. Questions of sentencing equity, on the other hand, are to be presented to the Sentence Review Division. *Lloyd,* *676* P.2d at 231. If Cope wishes to pursue his equity argument, he may do so in the Sentence Review Division.

Affirmed.

_____
Justice

18

We concur:

_F. A. Turnage_
Chief Justice

_John Conway Harrison_

_Fred J. Weber_

_William E. Hunt_

_R. C. McDonough_

_Justices_

October 30, 1991

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


John L. Pratt
Ask & Pratt
P.O. Box 685
Roundup, MT  59072

Hon. Marc Racicot, Attorney General
Matthew F. Heffron and Barbara Harris, Assistants
Justice Bldg.
Helena, MT  59620

Vicki Krause
Musselshell County Attorney
P.O. Box 236
Roundup, MT  59072

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy