No. 91-611

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

DAVID FOREST BOWER,

Defendant and Appellant.

FILED

JUL 2 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula,
                The Honorable Douglas G. Harkin, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                John E. Smith and Marcia M. Jacobson, Public
                Defender's Office, Missoula, Montana

        For Respondent:

                Hon. Marc Racicot, Attorney General, Cregg W.
                Coughlin, Assistant Attorney General, Helena,
                Montana
                Robert L. Deschamps, III, County Attorney, Robert
                Zimmerman, Deputy County Attorney, Missoula, Montana


Submitted on Briefs:    May 7, 1992

Decided:    July 2, 1992

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The defendant, David Forest Bower, appeals his conviction of aggravated assault following a nonjury trial in the District Court of the Fourth Judicial District, Missoula County. We affirm.

The issues on appeal are:

1. Did the District Court commit reversible error when it admitted evidence concerning the defendant's character during the State's case-in-chief?

2. Is there sufficient evidence in the record to support the defendant's conviction of aggravated assault?

On the evening of July 20, 1990, the defendant went to Connie's Lounge in Missoula, Montana where he encountered his ex-girlfriend, Holly Torgerson, and her boyfriend, Mark Moore. Torgerson is the mother of the defendant's son. Moore testified that on three occasions the defendant approached him and Torgerson and loudly made remarks maligning Torgerson's reputation. After the third occasion he approached the defendant to ask him to stop the verbal harassment. Moore testified that, before he could say anything to the defendant, the defendant struck him in the head with a bar glass. The blow and resulting struggle left several lacerations on Moore's forehead and right cheek.

Bar employees separated the defendant and Moore and moved them outside the bar. Missoula police officers arrived and transported Moore to the hospital. Moore testified that he was at the hospital for three or four hours during which time he received 57 sutures to close his facial lacerations.

2

Tracy Reinke was in Connie's Lounge during the time of the altercation between the defendant and Moore. She testified that she heard an argument start as the defendant walked up to Moore. She stated that later in the evening she was standing next to and talking with the defendant when he threw a punch at Moore "[a]nd the next thing I knew he [Moore] got sliced."

The defendant testified that Moore and Torgerson were attempting to fight with him because of a continuing custody battle over his son and a pending assault charge which he made against Torgerson. He claimed that while he was in the bar he tried to avoid Moore and Torgerson as much as possible and that he was concerned for his safety. He testified that when Moore approached, he thought it was to fight so he "reached out and stopped him" and told him to stay away. Moore then hit him in the lip and head. He then defended himself, striking Moore. The defendant claimed that he was unaware that he had a bar glass in his hand when he struck Moore because he was concentrating on defending himself.

Reinke testified in rebuttal to the defendant's testimony that approximately one month after the incident at Connie's Lounge, the defendant approached her on the street and inquired if she was going to testify at trial. She claimed that when she told him that she was going to testify, he advised her not to say anything. She testified that the defendant threatened her by stating, "I know where your kids go to school and where you live."

Moore testified that in August or September 1990 he was driving down a Missoula street when he saw the defendant standing

3

at the street corner. He claimed that the defendant threatened to hit him again with a glass.

Darla Veltkamp, who was also present at Connie's Lounge on the night of the altercation, told the investigating police officer that Moore threw the first punch. She testified at trial, however, that she did not see the altercation at all and had lied to the officer because she was intimidated by the defendant, who was standing nearby when she gave her original statement. She testified that, before the altercation, the defendant had offered to give her ten dollars and buy her a drink if she would "punch out" Torgerson. Veltkamp further testified that the defendant approached her at a later time and told her to tell authorities that he did not throw the first punch so he could "get off the charges."

The defendant denied that he threatened Moore in August or September 1990. He testified that Moore drove up to him on the street and said, "You ain't going to get away with threatening me any more." He claimed that he did not know what Moore's statement meant because he had not said a word to the defendant since their altercation. The defendant also claimed that it was Veltkamp who offered to "punch out" Torgerson for ten dollars and a drink and that he rejected her offer.

The defendant was charged by an amended information with aggravated assault in violation of § 45-5-202, MCA. A nonjury trial was held on April 1, 1991. At the conclusion of the State's case-in-chief, the District Court denied the defendant's motion for

4

a directed verdict of acquittal. The court took the matter under advisement at the conclusion of the trial and thereafter, on April 5, 1991, found the defendant guilty of aggravated assault. The defendant was sentenced to fifteen years in prison and designated a dangerous offender for purposes of parole. This appeal followed.

I.

Did the District Court commit reversible error when it admitted evidence concerning the defendant's character during the State's case-in-chief?

During the direct examination of Joe Marshall, who was bartending at Connie's Lounge on the night of the altercation, the prosecutor inquired of the victim Moore's reputation in the community for violence or nonviolence. He then asked the same question about the defendant's reputation. Over objection, Marshall was permitted to answer, "I've known him [the defendant] to be in one or two scuffles before."

The defendant asserts that the District Court's admission of evidence concerning his reputation or character during the State's case-in-chief was reversible error. He argues that under Rule 404(a)(1), M.R.Evid., the prosection can offer character evidence only in rebuttal to an accused's offer of character evidence, citing State v. Gommenginger (1990), 242 Mont. 265, 790 P.2d 455. He claims that he did not present such character evidence.

The State concedes that the District Court's admission of the evidence was error. It argues, however, that the response elicited from Marshall was not prejudicial to the defendant and, thus, the

5

court's error was harmless.

An error by the trial court will be deemed harmless "unless the record shows that the error was prejudicial." Section 46-20-701(1), MCA. "The test of prejudicial error requiring reversal is whether there is a reasonable possibility the inadmissible evidence might have contributed to the verdict." Brodniak v. State (1989), 239 Mont. 110, 114, 779 P.2d 71, 73 (citations omitted). When assessing the prejudicial effect of an error, we examine the totality of the circumstances in which the error occurred. Brodniak, 239 Mont. at 115, 779 P.2d at 74. In addition, when the error involves inadmissible evidence, we will not evaluate the evidence in isolation; to do so would risk magnifying the prejudicial effect of the error beyond its actual impact on the verdict. Brodniak, 239 Mont. at 115, 779 P.2d at 74.

After a careful review of the record, we are not convinced that Marshall's testimony was prejudicial to the defendant. The limited reference to one or two prior scuffles did not indicate that the defendant had a propensity or reputation for violence. Marshall did not state whether the prior scuffles were in or out of the barroom setting. Nor did he indicate whether the defendant instigated those scuffles. Given the substantial, if not overwhelming, evidence in the record supporting the defendant's conviction, we conclude that there is no reasonable possibility that Marshall's testimony contributed to the defendant's conviction. Accordingly, we hold that the error on the part of the District Court in admitting the testimony was harmless.

6

Is there sufficient evidence in the record to support the defendant's conviction of aggravated assault?

The defendant contends that the District Court erred when it denied his motion for a directed verdict of acquittal at the conclusion of the State's case-in-chief and when it found him guilty at the conclusion of trial. He argues that the evidence presented was not sufficient to establish that he committed the offense of aggravated assault.

The standard of review of the sufficiency of the evidence is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Riley (Mont. 1992), ___ P.2d ___, 49 St.Rep. 408. This standard of review is the same whether reviewing the trial court's refusal to grant the defendant's motion for a directed verdict of acquittal or the verdict of guilty. See State v. Downing (1989), 240 Mont. 215, 783 P.2d 412; State v. Miller (1988), 231 Mont. 497, 757 P.2d 1275.

We note that in State v. Cope (1991), 250 Mont. 387, 819 P.2d 1280, we adopted a "clearly erroneous" standard of review for judge-made findings of fact in criminal cases. Cope involved our review of a district court's findings of fact relating to evidence presented at a suppression hearing as well as evidence presented at a bench trial with respect to the substantive elements of the criminal offense. We applied the "clearly erroneous" standard to

the court's findings in both situations, stating that "[w]e see no reason to maintain a different standard of review in criminal cases than we apply in civil cases, as long as we continue to require the State to prove the substantive elements of the criminal offense beyond a reasonable doubt at trial on the merits." Cope, 250 Mont. at 396, 819 P.2d at 1286.

Subsequent to Cope, we further developed the clearly erroneous standard of review by adopting a three-part test to be applied in reviewing judge-made findings of fact:

> First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. [Citations omitted.] Third, if substantial evidence exists and the effect of the evidence has not been misapprehended the Court may still find that "[A] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed." [Citation omitted.]

Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. In light of the impropriety of applying the second and third prongs of the DeSaye test to findings of fact regarding a defendant's guilt in a criminal case, we conclude that it is necessary to overrule that portion of Cope which holds that the "clearly erroneous" standard is to be applied to judge-made findings of fact on the substantive elements of the criminal offense. Where sufficiency of the evidence or elements of the offense issues are presented on appeal, our standard of review, as stated above, will be whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact

8

could have found the essential elements of the crime beyond a reasonable doubt. We will continue to use the "clearly erroneous" standard of review for judge-made findings of fact on other issues in criminal proceedings pursuant to Cope.

The defendant first argues that because no testifying witness actually saw who threw the first punch, "it was impossible for the State to prove assault beyond a reasonable doubt in the face of Defendant's claim of self defense." We disagree.

Moore testified that when he approached the defendant to ask him to stop the verbal harassment, the defendant struck him in the head with the bar glass. He denied that he threw the first punch and alleged that the defendant had instigated the physical altercation. Although it is unclear from the record whether Reinke witnessed the altercation from its beginning, she did testify that she was standing next to and talking with the defendant when "the next thing [she] knew [Moore] got sliced." The fact that the defendant's testimony conflicted with that of the State's witnesses does not, by itself, render the evidence insufficient to support his conviction. The weight of the evidence and the credibility of the witnesses are exclusively within the province of the trier of fact; when the evidence conflicts, the trier of fact determines which shall prevail. State v. Whitcher (1991), 248 Mont. 183, 188, 810 P.2d 751, 754.

In State v. Lozeau (1982), 200 Mont. 261, 650 P.2d 789, this Court rejected a similar argument that the evidence was insufficient because there were no eyewitnesses who saw the

9

defendant stab the victim. We concluded that the defendant's argument that his conviction was based on speculation, conjecture or probability was without merit, stating:

> Section 26-1-501, MCA, permits the [trier of fact] to make such inferences based on the facts proved. "The [trier of fact] is not bound to blindly accept defendant's version of the facts. It is free to pick and choose the evidence it wishes to believe." State v. Sorenson (1980), Mont., 619 P.2d 1185, 1194, 37 St.Rep. 1834, 1845.

Lozeau, 200 Mont. at 265, 650 P.2d at 791.

Similarly, in State v. Reiner (1978), 179 Mont. 239, 254, 587 P.2d 950, 959, we held that "[t]he mere fact that defendant testified to a self-defense claim does not entitle him to an acquittal." We stated that where the evidence on a self-defense claim is conflicting, it is the function of the trier of fact to weigh the testimony and decide whether the defendant acted with the belief that the use of force was necessary and, if so, whether such belief was reasonable. Reiner, 179 Mont. at 254, 587 P.2d at 958-59.

Here, the District Court, as the trier of fact, weighed the evidence, assessed the credibility of the witnesses and found that the State's version of the incident was more credible than the defendant's. Such a finding is supported by the evidence. Given the testimony of the State's witnesses regarding the incident and the defendant's subsequent threats related to the incident, the District Court reasonably could infer that the defendant instigated the physical altercation and was not acting in self-defense.

The defendant next argues that the evidence was not sufficient

10

to establish aggravated assault because the State did not prove beyond a reasonable doubt that he possessed the necessary mental state for the offense. A person commits the offense of aggravated assault if that person purposely or knowingly causes serious bodily injury to another person. Section 45-5-202(1), MCA. The defendant maintains that in order for the District Court to find that he possessed the necessary mental state for aggravated assault, the State had to prove that he intended to cause cuts to Moore's face with the bar glass. The defendant's argument is misplaced.

In order to possess the necessary mental state for aggravated assault, the defendant must have acted purposely or knowingly. "Purposely" is defined in § 45-2-101(58), MCA, which provides in part:

> [A] person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is his conscious object to engage in that conduct or to cause that result. [Emphasis added.]

"Knowingly" is defined in § 45-2-101(33), MCA, which provides in part:

> [A] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct. [Emphasis added.]

The record contains substantial evidence from which the District Court could infer that the defendant acted both purposely and knowingly. In addition to the testimony of the State's witnesses, the defendant admitted that he voluntarily and

11

intentionally struck Moore. The court, as the trier of fact, chose not to believe the defendant's testimony that he struck Moore in self-defense. Even if the defendant did not intend to cut Moore, it cannot reasonably be argued that he was not aware of the high probability that striking Moore in the face with the bar glass would cause facial lacerations.

Finally, the defendant argues that the evidence was not sufficient to establish that Moore suffered serious bodily injury. "Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function or process of any bodily member or organ." Section 45-2-101(59), MCA. Whether Moore's injury created a substantial risk of death is not at issue in this case. The defendant argues that, because the State did not present expert medical testimony, it was impossible for the District Court to find beyond a reasonable doubt that Moore's injury was a serious permanent disfigurement. We disagree.

We previously have stated that a nonexpert witness is competent to testify as to his or her past or present condition. Cain v. Stevenson (1985), 218 Mont. 101, 105, 706 P.2d 128, 131. Further, expert medical testimony is not necessary to prove the permanency of an injury where the permanency is undisputed and apparent from the nature of the injury itself. Cain, 218 Mont. at 105, 706 P.2d at 131.

In our view, it is clear that Moore suffered serious permanent disfigurement. "The term 'disfigurement' connotes, among other

12

things, deformity, defacement, marring and/or damage to one's attractiveness." State v. Goodwin (1984), 208 Mont. 522, 529, 679 P.2d 231, 235. Moore testified to the extensive scarring on his face and that his scars were permanent. He also testified that at the time of trial, over eight months after the altercation, he was still experiencing numbness in his right cheek where one of the lacerations occurred. Moore's testimony was uncontroverted at trial.

The State's failure to present expert medical testimony was not fatal to establishing serious bodily injury under the circumstances of this case. The District Court, based upon the nature of Moore's injury and his uncontroverted testimony, could find without the aid of expert medical testimony that Moore suffered serious bodily injury. We hold that, based on the evidence presented at trial, any rational trier of fact could have found the defendant guilty of the offense of aggravated assault beyond a reasonable doubt.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

13

_William E Hewitt_

Justices

July 2, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

John E. Smith
Public Defender's Office
317 Woody St.
Missoula, MT   59802

Hon. Marc Racicot, Attorney General
Cregg W. Coughlin, Assistant
Justice Bldg.
Helena, MT   59620

Robert L. Deschamps, III, County Attorney
Robert Zimmerman, Deputy
Missoula County Courthouse
Missoula, MT  59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy