No. 90-593

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

  Plaintiff and Respondent,

v.

RANDALL DEAN CRISP,

  Defendant and Appellant.

FILED

JUL - 2 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell Fillner, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

  Gary E. Wilcox, Attorney at Law, Billings, Montana

  For Respondent:

    Hon. Marc Racicot, Attorney General, Helena, Montana
Patricia J. Jordan, Assistant Attorney General,
Helena, Montana
Dennis Paxinos, Yellowstone County Attorney,
Billings, Montana; Charles Bradley, Deputy County
Attorney, Billings, Montana

Submitted on Briefs: April 11, 1991

Decided: July 2, 1991

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

A jury impaneled in the Thirteenth Judicial District Court, Yellowstone County, found defendant and appellant, Randall Crisp, guilty of one count of criminal endangerment, a felony. Defendant appeals. We affirm.

The following issues are raised on appeal:

1. Is § 45-5-207, MCA, which defines criminal endangerment, unconstitutionally vague?

2. Did the District Court err in refusing defendant's instruction defining "substantial risk of death"?

Defendant and Renae Yancey had lived together off and on for five years. On March 16, 1990, they were living in an area of Billings known as Lockwood. They spent that evening drinking with friends in Billings. Testimony at trial conflicted regarding the time the couple left the nightclub known as T-Birds, the route they took home, and, most importantly, the events that transpired during the ride home.

Yancey, who is 5'3" tall and weighs 108 lbs., testified that on the way home defendant accused her of spending money on someone else, called her a tramp and a whore, grabbed her by the hair, beat her head between the seats, hit her in the shoulder and face, and threatened to kill her. Defendant drove past the turnoff to their trailer and stopped in a field. He opened the passenger door and yanked her out by her hair. When she landed on the ground on her

2

hands and knees, defendant, who is 6'4" tall and weighs between 205 and 210 lbs., proceeded to stomp on her and kick her with his cowboy boots until about 4 a.m., over three hours later. He kicked her in the head, neck, shoulder, arms, elbows, wrists, hands, back, chest, stomach, shins, buttocks, knees, and thighs--in short, every part of her body. She lost consciousness several times. He threatened to kill her numerous times.

She further testified that, after he quit beating her, defendant yanked her back into the Jeep, and took her to their trailer. There, he pulled her out of the car by her hair, pushed her up the steps, and continued to beat her. He followed her into the bathroom, where he began to draw a bath. He told her that she needed to get cleaned up to go to the hospital. When she went into the living room to get away from him, he grabbed a steak knife and threatened to kill her. She fell against a cupboard and crawled to the couch. He yelled at her for bleeding on the couch, then went to turn off the bath. She ran out of the front door and sought assistance from the neighbors.

Defendant took the stand on his own behalf and testified that he and Yancey began arguing on the way home. At one point, Yancey started kicking him. He struck back at her, slapping her on the arm, leg, shin, foot, and ribs. After he had resumed driving, he heard the door to the Jeep open and saw Yancey falling out of the

vehicle. He grabbed her foot, but did not have the strength to pull her back into the Jeep. She fell out.

Law enforcement officers were called at approximately 4:30 a.m. The deputy who first responded to the call testified that Yancey was extremely afraid that defendant was going to kill her. Defendant was immediately arrested. He told the deputies that Yancey had jumped out of the Jeep while it was moving. At the Yellowstone County Detention Facility, he stated that any blood on his clothing would be hers.

Dr. Dennis Tek, the emergency room physician, testified that Yancey had suffered numerous bruises about the face, head, neck, chest, back, shoulders, thighs, and left shin. She had swelling over the left cheekbone and a two centimeter laceration on her scalp in the right superior temporal area.

Dr. Tek stated that being kicked about the head and body with cowboy boots could possibly cause protracted loss or impairment of a bodily member or organ, serious permanent disfigurement, or death. He testified that Yancey had received a concussion, which could have been a life-threatening condition if she had lost consciousness. In response to the State's hypothetical on redirect, he answered that a two-hour beating that rendered the victim unconscious could place the victim in a substantial risk of serious bodily injury. He noted on recross-examination, however,

4

that the injuries Yancey actually received from this incident did not pose a substantial risk.

The jury found defendant guilty of criminal endangerment, a felony, but acquitted him of resisting arrest, a misdemeanor. Defendant was sentenced to ten years in the Montana State Prison, with all ten suspended. This appeal followed.

## I.

**Is § 45-5-207, MCA, which defines criminal endangerment, unconstitutionally vague?**

A defendant may challenge the constitutionality of a statute by arguing that the statute is so vague that it is void on its face or that it is vague as applied in his particular situation. City of Choteau v. Joslyn, 208 Mont. 499, 505, 678 P.2d 665, 668 (1984).

"A statute is void on its face if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." State v. Woods, 221 Mont. 17, 22, 716 P.2d 624, 627 (1986); Joslyn, 208 Mont. at 505, 678 P.2d at 668. No person should be required to speculate as to whether his contemplated course of action may be subject to criminal penalties. State v. Conrad, 197 Mont. 406, 412, 643 P.2d 239, 243 (1982).

The statute challenged in this case defines the offense of felony criminal endangerment as follows:

(1) A person who knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another commits the offense of criminal endangerment. This conduct includes but is not limited

5

to knowingly placing in a tree, log, or any other wood any steel, iron, ceramic, or other substance for the purpose of damaging a saw or other wood harvesting, processing, or manufacturing equipment.

(2)    A person convicted of the offense of criminal endangerment shall be fined an amount not to exceed $50,000 or imprisoned in the state prison for a term not to exceed 10 years, or both.   (Emphasis added.)

Section 45-5-207, MCA.

Defendant argues that the statute is vague on its face because it does not require a specific intent to cause the risk.  In State v. Clawson, 239 Mont. 413, 421, 781 P.2d 267, 272 (1989), we indicated that a defendant may commit the offense of felony criminal endangerment by engaging in negligent or reckless conduct. A plain reading of the felony criminal endangerment statute, however, establishes that the State must prove that the defendant acted knowingly.   If the State can establish only that the defendant acted negligently, the defendant may be convicted of violating § 45-5-208, MCA, misdemeanor negligent endangerment; he may not be convicted of violating § 45-5-207, MCA, felony criminal endangerment.

Knowingly is defined in § 45-2-101(33), MCA, as follows:

[A] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists.   A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct.   When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence.

6

Equivalent terms such as "knowing" or "with knowledge" have the same meaning.

Accordingly, a defendant commits the crime of criminal endangerment when he is aware that there is a high probability that his conduct may cause a substantial risk of death or serious bodily injury to another. By incorporating the intent element of knowingly, a mental state that is adequately defined by statute, the legislature has given fair warning of the mental state required in order to be convicted of felony criminal endangerment. The use of the mental state of knowingly does not render a statute unconstitutionally vague. City of Billings v. Batten, 218 Mont. 64, 70, 705 P.2d 1120, 1124 (1985).

The defendant also takes issue with the phrase "substantial risk of death." He argues that the term fails to define the type of conduct proscribed by the statute.

Montana statutes do not define the phrase substantial risk of death. The phrase is not so arcane or obscure, however, as to give insufficient notice of the conduct prohibited by the criminal endangerment statute. "Substantial" is defined as "not imaginary or illusory: real, true." Webster's Ninth New Collegiate Dictionary 1176 (1986). "Risk" is defined as "possibility of loss or injury: peril." Webster's at 1018. Thus, the term substantial risk of death, warns a person of ordinary intelligence that if he engages in conduct that could result in a real possibility of loss or injury--in this case, death--he could be found guilty of the

crime of criminal endangerment. The fact that the phrase is not defined in the code does not make the statute vague on its face.

Defendant also argues that the term substantial risk of death is ambiguous because it fails to set forth the degree of the injuries that must be suffered by the victim. Defendant's argument rests on the faulty premise that the victim's injuries must pose a substantial risk of death. The statute, however, does not require that the victim suffer actual physical injury. See Campas v. Superior Court, 767 P.2d 230, 232 (Ariz. Ct. App. 1989) (interpreting Arizona's reckless endangerment statute). It requires only that the defendant engage in conduct that creates a substantial risk of death or serious bodily injury. Defendant has not persuaded us that the statute is unconstitutionally vague on its face.

Nor is the statute unconstitutionally vague as applied to the facts of this case. Taking the facts in the light most favorable to the State, as we must on review, City of Whitefish v. O'Shaughnessy, 216 Mont. 433, 437, 704 P.2d 1021, 1024 (1985), defendant severely beat Renae Yancey for three hours. With cowboy boots, he kicked her in the head, the stomach, and almost every other part of her body. Surely, a person of ordinary intelligence would understand that such conduct created a substantial risk of death or serious bodily injury.

## II.

**Did the District Court err in refusing defendant's instruction defining "substantial risk of death"?**

At trial, the District Court refused to give defendant's instruction defining substantial risk of death. The instruction read as follows:

> Substantial risk of death means something more than bodily injury. A substantial risk of death is posed by injuries which are graver and more serious. In order that substantial risk of death exist, it is not necessary that the person die; however, in order for a substantial risk of death to exist, it is necessary that a condition or injury exist that without treatment of which, the likelihood of death increases. A substantial risk of death is more than a risk of death.

The instruction erroneously indicates that the victim must sustain an injury that poses a substantial risk of death. As we noted above, however, the statute does not require that the victim suffer any injuries. It requires only that the defendant engage in conduct that creates a substantial risk of death or serious bodily injury.

Furthermore, the jury need not be instructed on words or phrases of common understanding or meaning. State v. Gould, 216 Mont. 455, 477, 704 P.2d 20, 34 (1985); State v. Camitsch, 192 Mont. 124, 138, 626 P.2d 1250, 1258 (1981). As we stated earlier, substantial risk of death is composed of commonly understood words. The jury was perfectly capable of determining whether defendant's

9

conduct posed a substantial risk of death without an instruction defining the term.

The instruction clouded, rather than clarified, the issues for the jury. The District Court did not err in refusing it.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices