JUSTICE HUNT
delivered the Opinion of the Court.
Following a jury trial in the Twenty-first Judicial District Court, Ravalli County, David B. Lambert (Lambert) was found guilty of criminal endangerment, a felony, and was sentenced to a term of years at the Montana State Prison. Lambert appealed.
We reverse and remand with instructions.
We address the following issue:
Did the District Court apply an incorrect mental state element to the offense of criminal endangerment?
FACTS
On August 20, 1994, Christine Peterson, along with her three children and a friend of theirs, was driving south on U.S. Highway 93 toward Darby, Montana, Peterson’s hometown. The group had just spent the day in Missoula shopping for school clothes. As they approached the town of Stevensville, travelling at about 50 or 55 miles per hour, Ms. Peterson saw a car pulling out of a roadside parking lot to her left. That car, driven by Lambert, proceeded across the highway immediately ahead of Ms. Peterson’s car, and Ms. Peterson applied her brakes, expecting to collide with the middle or rear side of Lambert’s car. Instead, Lambert turned his car toward Ms. Peterson’s car; his car was now facing north in Ms. Peterson’s southbound lane, and the two vehicles collided head-on.
*233 Witnesses at the scene immediately after the collision occurred noted that Lambert smelled and acted as if he had been drinking. A Montana highway patrol officer, after questioning Lambert and conducting a field sobriety test, determined that Lambert had indeed been drinking and suspected that he was intoxicated. Lambert was unable to provide the officer a driver’s license or proof of auto insurance, and the officer soon discovered that Lambert’s driving privileges had previously been revoked. Lambert was ultimately charged with the following offenses: criminal endangerment; DUI; driving while license suspended or revoked; failure to have auto insurance; and failure to use a seatbelt.
Lambert proceeded to trial on the charges of criminal endangerment and DUI, having previously entered guilty pleas to the other three charges. After the State presented its case-in-chief, Lambert moved for an acquittal of the criminal endangerment charge, claiming that the State had not proven beyond a reasonable doubt that Lambert had acted “knowingly,” the requisite mental state for the offense of criminal endangerment. The court denied Lambert’s motion, after first hearing arguments from Lambert and the State regarding which definition of “knowingly” applied to criminal endangerment.
After the defense rested without calling any witnesses, the parties and the court settled jury instructions. The court decided to instruct the jury on three out of four definitions of “knowingly” contained in a pattern jury instruction, and to instruct the jury that Lambert did not need to intend the result that occurred in order to have acted with the requisite mental state. The court also decided to instruct the jury that a person in an intoxicated condition is criminally responsible for his conduct, and that an intoxicated condition could not be taken into account in determining the existence of a mental state which is an element of the offense. Lambert objected to these instructions.
The jury returned a verdict finding Lambert guilty of criminal endangerment, but did not return a verdict on the DUI charge. Lambert was subsequently sentenced to a term of years at the Montana State Prison. This appeal followed.
DISCUSSION
Did the District Court apply an incorrect mental state element to the offense of criminal endangerment?
Lambert argues that the District Court misinterpreted the meaning and application of “knowingly,” the mental state element of the *234 offense of criminal endangerment. We review a district court’s interpretation or application of the law to determine if that interpretation or application was correct. State v. Christensen (1994), 265 Mont. 374, 877 P.2d 468.
Section 45-5-207(1), MCA, provides, in pertinent part, that a person commits the offense of criminal endangerment if he “knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another.” Section 45-2-101(34), MCA, provides multiple definitions of “knowingly”:
[A] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person’s own conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is aware that it is highly probable that the result will be caused by the person’s conduct. When knowledge of the existence of a particular fact is an element of an offense, knowledge is established if a person is aware of a high probability of its existence.
In denying Lambert’s motion for acquittal, the court determined that “knowingly,” the mental state element of the offense of criminal endangerment, could be established by evidence showing that a defendant was aware of his conduct. The court decided that the State had presented sufficient evidence on this issue for the case to go to the jury. Later, when settling jury instructions, the court determined that it would instruct the jury as to three distinct definitions of “knowingly.” Instruction No. 12, given to the jury, reads as follows:
Knowingly
A person acts knowingly:
(1) when he is aware of his conduct or
(2) when he is aware under the circumstances that his conduct constitutes a crime or
(3) when he is aware there exists the high probability that his conduct will cause a specific result. (Emphasis added.)
Lambert argues that the court applied an incorrect mental state element to the offense of criminal endangerment, and that the court, in relying on this mistaken interpretation of the law, erred in denying Lambert’s motion for an acquittal and erred in instructing the jury with respect to the applicable definition of “knowingly.” We will review the court’s interpretation of the law, and then determine whether it was proper for the court to rely on this interpretation of *235 the law in denying Lambert’s motion for acquittal and in instructing the jury.
Lambert contends that the different definitions of “knowingly found in § 45-2-101(34), MCA, distinguish between different elements of criminal offenses, and that therefore “the statute defining the offense” governs which definition of “knowingly” applies. Lambert contends that the offense of criminal endangerment is defined in terms of the result of conduct. Under that construction, Lambert argues that in order to prove the “knowingly’ element of criminal endangerment beyond a reasonable doubt, the State must establish that an accused was aware of the high probability that his conduct would cause a substantial risk of death or serious bodily injury to another. Lambert contends that we reached this same conclusion in State v. Crisp (1991), 249 Mont. 199, 814 P.2d 981.
In Crisp, we rejected a constitutional challenge to the criminal endangerment statute. The defendant in that case alleged that the statute was unconstitutionally vague because it did not require a specific intent to cause the substantial risk. We noted that the appropriate mental state was “knowingly,” set out the definitions of “knowingly’ provided in § 45-2-101(33), MCA (these same definitions of “knowingly” are now found in § 45-2-101(34), MCA (1995)), and concluded that “[a]ccordingly, a defendant commits the crime of criminal endangerment when he is aware that there is a high probability that his conduct may cause a substantial risk of death or serious bodily injury to another.” Crisp, 814 P.2d at 983.
The State argues that our holding in Crisp does not imply that there can be only one definition of “knowingly’ applied to the offense of criminal endangerment. Put another way, the State argues thát in defining criminal endangerment as we did in Crisp, we were merely asserting one of a number of different definitions of “knowingly’ that could apply. The State also contends that Crisp is not controlling here because the issue of which definition of “knowingly” applied to criminal endangerment was not before us in that case. In any event, the State argues that the definition of “knowingly that we used in Crisp was incorrect; the language of the criminal endangerment statute plainly provides that “knowingly” refers to a defendant’s conduct, not the result of his conduct.
While we agree with the State that our holding in Crisp does not directly control the disposition of the matter before us, we cannot agree that in Crisp we applied the wrong definition of “knowingly” to the offense of criminal endangerment. Moreover, we cannot agree *236 that any one of the definitions of “knowingly” found in § 45-2-101(34), MCA, is applicable to the offense of criminal endangerment. Finally, agreeing as we do that the issue of what definition of “knowingly applies to this offense has not previously been before this Court does not require us to ignore how we have consistently articulated the elements of criminal endangerment. See Crisp, 814 P.2d at 983; State v. Smaage (1996), 276 Mont. 94, 98, 915 P.2d 192, 195. We find Lambert’s arguments persuasive, and dispose of this issue in his favor.
Our reading of the criminal endangerment statute is that it emphasizes result over conduct. The portion of the statute that we are reviewing here does not particularize the conduct that, if engaged in, results in the commission of the offense. Rather, a person may engage in a wide variety of conduct and still commit the offense of criminal endangerment, provided that the conduct creates a substantial risk of death or serious bodily harm. It is the avoidance of this singular result, the risk of death or serious harm, that the law attempts to maintain.
There being no particularized conduct which gives rise to criminal endangerment, applying to that offense’s mental element the definition of “knowingly that an accused need only be aware of his conduct is incorrect. It is the appreciation of the probable risks to others posed by one’s conduct that creates culpability for criminal endangerment; were it otherwise, where culpability could lie for mere appreciation of one’s conduct, such as driving a car or shooting a hunting rifle, some very unfair results could follow.
In our view, the relevant statutory scheme recognizes and addresses these concerns. As Lambert points out, § 45-2-101(34), MCA, provides on the one hand that “a person acts knowingly with respect ■ to conduct ... described by a statute defining an offense when the person is aware of the person’s own conduct....”, and provides on the other hand that “[a] person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is aware that it is highly probable that the result will be caused by the person’s conduct.” (Emphasis added.) Conduct is not described by § 45-5-207(1), MCA, but the result of conduct is: “a substantial risk of death or serious bodily harm.”
In addition, § 45-2-103(4), MCA, explains that “[i]f the statute defining an offense prescribes a particular mental state with respect to the offense as a whole without distinguishing among the elements of the offense, the prescribed mental state applies to each element.” *237 The criminal endangerment statute provides that the mental state “knowingly” applies, without apparent distinction, to the elements (1) engage in conduct (2) that creates a substantial risk of death or serious bodily harm to another. According to § 45-2-103(4), MCA, “knowingly” applies to both conduct and the result of that conduct.
We conclude that the “knowingly” element of criminal endangerment contemplates a defendant’s awareness of the high probability that the conduct in which he is engaging, whatever that conduct may be, will cause a substantial risk of death or serious bodily injury to another.
We hold that the District Court incorrectly applied as the mental element of the offense of criminal endangerment the definition of “knowingly” that a defendant need only be aware of his conduct. We also hold when the District Court relied on this misinterpretation of the law in denying Lambert’s motion for acquittal and in instructing the jury, the court committed reversible error. The general effect of the court’s misinterpretation, manifest in the two rulings complained of, was to alter the State’s burden of proving beyond a reasonable doubt the elements of the offense: to prove that a defendant was aware of his conduct is one thing; to prove that he was aware of the high probability of the risks posed by his conduct is quite another. The particular effect of the court’s interpretation is a violation of due process rights as provided by Article II, Section 17 of the Montana Constitution.
We remand this case to the District Court to reconsider the motion for acquittal under the standard set forth in this opinion. If the evidence presented at trial was not sufficient to establish the element that the defendant was aware of the high probability of the risk posed by his conduct, the motion for acquittal must be granted. If the court finds that the State’s evidence was sufficient to withstand the motion for acquittal, then the court must grant a new trial because of the erroneous jury instruction. We reverse and remand for reconsideration of appellant’s motion for acquittal. If the motion for acquittal is denied then a new trial must be granted.
Reversed and remanded with instructions.
JUSTICES GRAY, LEAPHART and TRIEWEILER concur.