No. 97-042

IN THE SUPREME COURT OF THE STATE OF MONTANA
1998 MT 84

STATE OF MONTANA,

Plaintiff and Respondent,

v.

PATRICK LANCIONE,

Defendant and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Larry Jent; Williams, Jent & Dockins;
Bozeman, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;
Patricia J. Jordan, Assistant Attorney General;
Helena, Montana

Marty Lambert, Gallatin County Attorney;
Bozeman, Montana

Submitted on Briefs: January 30, 1998

Decided:   April 14, 1998
Filed:

_____

Justice Jim Regnier delivered the opinion of the Court.

¶1    Patrick Lancione was charged by information on June 7, 1996, with the offense of criminal endangerment, a felony, in violation of § 45-5-207, MCA. Lancione was tried by a jury in the Eighteenth Judicial District Court, Gallatin County, and found guilty. Lancione appeals from the sentence and the judgment of the District Court.  We affirm.

¶2    The following issues are presented on appeal:

¶3    1.    Did the District Court abuse its discretion in admitting evidence of Lancione's behavior immediately prior to the crime?

¶4    2.    Is § 45-5-207, MCA, defining the offense of criminal endangerment,  unconstitutionally vague on its face or as applied to Lancione?

¶5    3.    Did the District Court err in instructing the jury on the mental state necessary to prove criminal endangerment?

¶6    4.  Was sufficient evidence presented at trial to convict Lancione of criminal endangerment?

              FACTUAL AND PROCEDURAL BACKGROUND

¶7     Patrick Lancione was a licensed real estate agent for Yogi Khalsa Realty Company, located in Bozeman, Montana.  The company was owned by Yogi Khalsa, a licensed broker.  Their business relationship, which began in 1993, had deteriorated by September 1995.  On September 5, 1995, Khalsa asked Lancione to find another broker to work for.

¶8   On June 7, 1996, Khalsa walked into Lancione's office and requested certain documents.  This request lead to an argument about the sharing of a commission from the sale of a real estate listing.  Khalsa testified that Lancione grabbed him, threw him against a wall, and shoved him out the door. Khalsa left Lancione's office and returned to his office.  He then decided to leave the building.  He walked out into the hallway to leave and was blocked by Lancione.

¶9   According to Khalsa, Lancione closely followed him down the hallway and pursued him down five flights of stairs.  At the last full flight of stairs, above a door to the lobby, Khalsa recalls Lancione saying, "You'll never make it to the street."  The last thing Khalsa remembers is going through the door with Lancione right behind him.  Khalsa regained consciousness lying on the floor in a pool of blood in front of the elevator about ten to twelve feet from the door.

¶10  According to Lancione's testimony, as he exited the door at the bottom of the stairwell, Khalsa tried to reach back and slam the door on him. Lancione then accidentally tripped into Khalsa and they both tumbled down the stairs.

¶11   On September 26, 1995, Lancione was charged by information in the Eighteenth Judicial District Court, Gallatin County, with the felony offense of criminal endangerment pursuant to § 45-5-207, MCA.  Lancione was tried by a jury on August 19-21, 1996, and found guilty.

¶12   On September 12, 1996, Lancione moved for a new trial.  He alleged that § 45-5-207, MCA, is unconstitutional on its face and as it is applied to him in this case.  He further alleged that the District Court erred in allowing certain character evidence to be admitted and that the evidence was insufficient as a matter of law to sustain the verdict.  On December 9, 1996, the District Court denied the motion for a new trial.

¶13   On December 12, 1996, the District Court deferred sentencing Lancione for a period of six years.   As a condition for the six-year deferred sentence, the court ordered Lancione to serve ninety days in the Gallatin County Detention Center.  Lancione was also ordered to pay restitution in the amount of $8,629.40.  Lancione now appeals the sentence and the judgment of the District Court.

ISSUE 1

¶14   Did the District Court abuse its discretion in admitting evidence of Lancione's behavior immediately prior to the crime?

¶15   At trial, the State offered the testimony of Colleen Kinnear regarding Lancione's behavior when she saw him on the street less than fifteen minutes before Khalsa was injured.  Kinnear, an acquaintance of Lancione, testified that she observed Lancione across the street on a corner walking toward her. She stated that Lancione was normally a neat and snappy  dresser.  However, on the day of the incident, she testified that:

> [Lancione] was less well groomed, his hair was not particularly combed, looked like it needed a cut. [He] [h]ad on sloppy, baggy pants, unpressed white shirt, just different from his normal appearance on a work day.

¶16   She then testified that as they were crossing the street from opposite corners, "he walked very slow, sort of deliberately slow."  At the time, she testified that there was a delivery truck waiting to make a turn.  When they met in the middle of the street, she testified that Lancione told her "Let's walk real slow. Let's piss the truck driver off."

¶17   Lancione argues that the District Court abused its discretion by not excluding the testimony of Kinnear.  At trial, Lancione objected to Kinnear's testimony, arguing that the admission of her testimony was not relevant under Rule 401, M.R.Evid., that it was character evidence prohibited by Rule 404(a), M.R.Evid., and that it was prejudicial pursuant to Rule 403, M.R.Evid.  In his motion for a new trial and on appeal, Lancione again argued that the District Court erred in admitting Kinnear's testimony on the same three grounds. However, in his motion for a new trial, Lancione, for the first time, raised Rule

404(b), M.R.Evid., as a basis to reverse the District Court.

¶18  The State counters that the introduced evidence was not evidence of a trait of character.  Instead, the State contends that it was evidence of a specific event showing Lancione's res gestae, or hostile state of mind, fifteen minutes before Khalsa was found injured.  Furthermore, the State contends that this Court should not consider Lancione's argument based on Rule 404(b), M.R.Evid., because he failed to object to the admission of Kinnear's testimony on this basis at trial.

¶19  In its order denying Lancione's motion for a new trial, the District Court concluded that because the crime of criminal endangerment involves the defendant's state of mind, the State was entitled to introduce this evidence concerning Lancione's state of mind fifteen minutes before the crime was committed.  Furthermore, the court stated that Kinnear's testimony was brief, approximately ten minutes out of a three-day trial, and was not unduly prejudicial.

¶20  The standard of review for evidentiary rulings is whether the district court abused its discretion.  See State v. Gollehon (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263.  The determination of whether evidence is relevant and admissible is left to the sound discretion of the trial judge and will not be overturned absent a showing of abuse of discretion.  See Gollehon, 262 Mont. at 301, 864 P.2d at 1263.

¶21  We conclude that the admission of Kinnear's testimony was an abuse of discretion by the District Court.  Kinnear's testimony does not directly relate to the incident between Lancione and Khalsa.  Instead, the testimony is used to portray Lancione's actions toward the truck driver as evidence of his intent to knowingly cause harm to Khalsa fifteen minutes later.  We conclude that the testimony was not relevant under Rule 401, M.R.Evid., and was therefore inadmissible.

¶22  Although we conclude that the testimony was inadmissible, we must now determine whether that error was prejudicial, thereby requiring reversal of the conviction.  Section 46-20-701, MCA, states, in relevant part, that "a cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial."  When prejudice is alleged in a criminal case, the prejudice will not be presumed, rather, it must be established from the record that a substantial right was denied.  State v. Wells (1983), 202 Mont. 337, 349, 658 P.2d 381, 388.  From the record, we must determine whether there is a reasonable possibility that the inadmissible evidence might have contributed to a conviction.  State v. Bower (1992), 254 Mont. 1, 6, 833 P.2d 1106, 1109.  In Bower, we noted that when assessing the potentially prejudicial effect of an error, we examine the totality of the circumstances in which the error occurred.  If the issue involves inadmissible evidence, we will not evaluate the evidence in isolation because that would risk magnifying the error beyond the impact it had on the verdict.  Bower, 254 Mont. at 6, 833 P.2d at 1109.

¶23  With these principles in mind, and after a thorough review of the transcript, we conclude that admitting Kinnear's testimony did not constitute prejudicial error.  At trial, the State's evidence clearly demonstrated that the working relationship between Lancione and Khalsa had deteriorated to the point where Khalsa asked Lancione to leave.  The evidence also showed that Khalsa's request lead to the incident on the stairs with Lancione following Khalsa down the stairs and threatening him.  Khalsa then ended up injured at the bottom of the stairs. The incident related by Kinnear on the street fifteen minutes before is entirely unrelated to the facts which gave rise to the criminal charge.  We agree with the District Court's conclusion that Kinnear's testimony was not unduly prejudicial and was brief in relation to the other evidence that the State presented at trial.

¶24   Without reaching the merits of the State's res gestae argument, we conclude that even though the District Court abused its discretion by allowing the admission of Kinnear's testimony, under the totality of the circumstances, it was not prejudicial error.

ISSUE 2

¶25  Is § 45-5-207, MCA, defining the offense of criminal endangerment, void because of vagueness on its face or as applied to Lancione?

¶26  Lancione argues that § 45-5-207, MCA, is unconstitutional for vagueness, both on its face and as applied to him.  He suggests that this Court should reexamine its opinion in State v. Crisp (1991), 249 Mont. 199, 814 P.2d 981, because the criminal endangerment statute is so broad that it is susceptible to arbitrary and discriminatory enforcement.

¶27  In Crisp, the defendant argued that § 45-5-207, MCA, was vague on its face because it does not require a specific intent to cause the risk and that the phrase "substantial risk of death" was not defined by statute.  This Court upheld the statute as constitutional for two reasons.  First, a plain reading of the statute establishes that the State must prove that a defendant acted knowingly.  Crisp, 249 Mont. at 203, 814 P.2d at 983.  Second, the fact that the statute does not define the phrase "substantial risk of death" does not render the statute facially vague because the term warns a person of ordinary intelligence that if he engages in conduct that could result in a real possibility of loss or injury he could be found guilty of the crime of criminal endangerment.  Crisp, 249 Mont. at 204, 814 P.2d at 984.

¶28  To raise a constitutional challenge to a statute for vagueness, Lancione must have standing.  When a challenge to a statute based on vagueness is raised, this Court must first determine whether the enactment reaches any constitutionally protected conduct.  State v. Lilburn (1994), 265 Mont. 258, 270, 875 P.2d 1036, 1044.  Next, "if the challenged statute is reasonably clear in its application to the conduct of the person bringing the challenge, it cannot be stricken on its face for vagueness."  Lilburn, 265 Mont. at 270, 875 P.2d at 1044 (citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc. (1982), 455 U.S. 489, 494-95, 102 S. Ct. 1186, 1190-91, 71 L. Ed. 2d 362, 369).   "One to whose conduct a statute clearly applies may not successfully

challenge it for vagueness." Parker v. Levy (1974), 417 U.S. 733, 756, 94 S. Ct. 2547, 2562, 41 L. Ed. 2d 439, 458.

¶29 We first conclude that the conduct proscribed by the statute does not interfere with any constitutional rights of a person or any conduct that is constitutionally protected. The purpose of the statute is to punish behavior by one person that "creates a substantial risk of death or serious bodily injury to another." Section 45-5-207, MCA.

¶30 Next, we conclude that § 45-5-207, MCA, clearly applies to Lancione's conduct. In this case, the jury determined that Lancione knowingly caused serious injury to Khalsa. The evidence that was presented was consistent with the State's theory that Lancione either pushed or threw Khasla from behind, causing him to fall down the stairs. On that basis, we conclude that Lancione does not have standing to bring a facial vaguesness or an as applied challenge to ¶ 45-5-207, MCA.

¶31 Therefore, we hold that Lancione does not have standing to challenge § 45-5-207, MCA, for vagueness on its face or as it applies to him in this case.

ISSUE 3

¶32 Did the District Court properly deny Lancione's motion for a directed verdict?

¶33 At the close of evidence, Lancione moved for a directed verdict based on the grounds that the State failed to prove that he knowingly subjected Khalsa to a risk of death or serious bodily injury. The District Court denied the motion.

¶34 A district court's decision to grant or deny a motion for a directed verdict lies within its sound discretion and will not be overturned absent an abuse of that discretion. State v. Romannose (1997), 281 Mont. 84, 88, 931 P.2d 1304, 1307. "We review a trial court's denial of a motion for a directed verdict to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Romannose, 281 Mont. at 88, 931 P.2d at 1307.

¶35 Lancione argues that the State failed to prove that Lancione caused Khalsa's injuries. Lancione contends that there was insufficient evidence offered to prove that he knowingly subjected Khalsa to a risk of death or serious bodily injury and, therefore, the District Court should have granted his motion for a directed verdict. The State responds that it presented sufficient evidence to withstand Lancione's motion for a directed verdict.

¶36 Lancione's main contention is that Khalsa admitted that he never saw, heard, or felt Lancione push him. Lancione asserts that Khalsa merely concludes that Lancione caused his injury because he was simply behind him. Therefore, the jury was left to speculate as to how Khalsa's injuries occurred.

¶37  As the State points out, circumstantial evidence alone is sufficient to obtain a conviction. State v. Buckingham (1989), 240 Mont. 252, 260, 783 P.2d 1331, 1337.  Circumstantial evidence must only be of such a "quality and quantity as to legally justify a jury in determining guilt beyond a reasonable doubt," and all the facts and circumstances must be considered collectively. State v. Weaver (1981), 195 Mont. 481, 637 P.2d 23.

¶38  The record shows that Khalsa testified that Lancione threatened him and told him he would not make it to the street.  He also testified that as Lancione was closely following him down the stairs and that, although he does not remember any body contact between him and Lancione, he could not have landed at the bottom of the stairs if he had merely tripped.  The evidence also showed that Khalsa was found in a pool of blood at the foot of the stairs, having traveled a distance farther than that resulting from a mere misstep.  In fact, Lancione, himself, testified that there was physical contact between him and Khalsa on the stairway. Also, another witness testified to the confrontation in the hallway between Khalsa and Lancione just before Khalsa was injured. Furthermore, the court allowed the jury to view the scene of the incident and draw its own conclusions from the testimony offered.

¶39  We conclude that the State presented sufficient evidence to support the conviction.  The circumstantial evidence was such that a jury could infer that Lancione caused Khalsa to fall down the stairs.  Thus, we conclude that the District Court did not abuse its discretion in denying Lancione's motion for directed verdict.

                    ISSUE 4

¶40  Did the District Court err in instructing the jury on the mental state of knowingly?

¶41  Lancione contends that the District Court erred in instructing the jury on the mental state of knowingly based on this Court's decision in State v. Lambert (1996), 280 Mont. 231, 929 P.2d 846.  In this case, the definition given by the court was that "a person acts knowingly when he is aware of the circumstances that his conduct constitutes a crime."  The definition of knowingly as established by this Court in Lambert provides that

    the 'knowingly' element of criminal endangerment contemplates
    a defendant's awareness of the high probability that the conduct
    in which he is engaging, whatever that conduct may be, will
    cause a substantial risk of death or serious bodily injury to
    another.

Lambert, 280 Mont. at 237, 929 P.2d at 850.

¶42  However, this Court notes that Lancione failed to object to any of the jury instructions during settlement of instructions before the case was turned over to the jury.  Furthermore, Lancione did not raise an argument regarding the jury instructions in his motion for a new trial or other relief with the District Court.

¶43   Upon review of Lancione's memorandum in support of his motion for a new trial or other alternative relief and the transcript of the District Court hearing held April 21, 1996, we conclude that Lancione did not raise any objections to the jury instructions.  Therefore, because this argument is raised for the first time on appeal, we will not address it.  Rasmussen v. Lee (1996), 276 Mont. 84, 88, 916 P.2d 98, 100.

¶44   Affirmed.

/S/   JIM REGNIER


We Concur:

/S/   WILLIAM E. HUNT, SR.
/S/   JAMES C. NELSON
/S/   TERRY N. TRIEWEILER
/S/   W. WILLIAM LEAPHART