No. 99-271

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 364

303 Mont. 386

15 P. 3d 944

THE STATE OF MONTANA,

Plaintiff and Respondent,

v.

JAMES GUSTAFSON,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender Office, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Ilka Becker,

Assistant Attorney General, Helena, Montana

Brant S. Light, Cascade County Attorney; Julie Macek, Deputy County

Attorney, Great Falls, Montana

Submitted on Briefs: November 2, 2000
Decided: December 28, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 The Defendant, James Gustafson, was charged by Information filed in the District Court for the Eighth Judicial District in Cascade County with felony assault, misdemeanor partner/family member assault, and unlawful restraint. Gustafson pled not guilty. The jury found Gustafson guilty of all three counts. The District Court sentenced Gustafson to ten years in the Montana State Prison with two years suspended for the felony assault conviction. Gustafson received an additional consecutive two-year sentence for use of a weapon during the commission of the felony assault and was given consecutive sentences for the other offenses. Gustafson appeals from evidentiary rulings by the District Court and from application of the weapon enhancement statute at sentencing. We affirm Gustafson's conviction but strike the sentence enhancement for use of a weapon.

¶2 The following issues are raised on appeal:

1. Did the District Court err when it denied Gustafson's motions to exclude testimony regarding the events surrounding his arrest?

2. Did the District Court err when it enhanced Gustafson's sentence for use of a weapon?

FACTUAL BACKGROUND

¶3 On April 13, 1998, Michelle Dahl attended a family friend's wedding reception. After going home and changing clothes, she went to James Gustafson's residence. Because Gustafson lived outside of Great Falls, Dahl did not arrive at his house until about 11 p.m.

Dahl and Gustafson had been dating for approximately two years.

¶4 Dahl and Gustafson were sitting on a sofa watching television when Dahl told Gustafson that his guitar was in her car and that she would bring it inside before she left. Dahl testified that Gustafson stood up and said "I am so tired of you hurting me," kicked her in the chest and knocked her backwards on the sofa. Gustafson then hit Dahl, called her names, and dragged her through the house.

¶5 When Gustafson went to the bathroom to get a washrag for Dahl, Dahl grabbed her keys from the floor and attempted to escape. As she reached the door, Gustafson grabbed her and threw her back on the couch. Gustafson told Dahl that he hated her, sat on top of her and put his knee on her throat, threatening to choke her if she spoke.

¶6 Gustafson then took a shotgun and put it under his chin with his finger on the trigger and said "I'm going to do it. I'm going to do it." Dahl begged Gustafson not to kill himself. After a few minutes, Gustafson waived the shotgun around and intentionally fired at the ceiling. Dahl testified that she thought Gustafson would kill her and then shoot himself. Throughout this episode, Gustafson also told Dahl he loved her. Dahl repeatedly asked Gustafson to let her leave.

¶7 After restraining Dahl at his house for approximately four hours, Gustafson agreed to let her leave but again suggested the possibility of taking his own life. Around 4 a.m., Dahl drove home and went to sleep for a few hours before going to work. At work the next morning, Dahl called the Victim Witness Office. Over her lunch hour, she met with two deputy sheriffs. She recounted the events of the previous night and handed over keys she had been given to Gustafson's residence.

¶8 Several officers went to Gustafson's house. They knocked on the door and announced their presence. After getting no response, the officers entered the house. Deputy Cascade County Sheriff Jim Panagopolous noticed a loaded shotgun in the foyer. He emptied the shotgun but noticed another shotgun in the living room. Panagopolous also noticed a rifle, with ammunition on the chair next to it, in one of the bedrooms. One of the officers checked the other bedroom door, which was locked. The officers believed that Gustafson was in the locked bedroom and were concerned that he might have additional weapons.

¶9 The officers went outside and took the weapons with them. Officer Panagopolous contacted his captain and explained the situation. It was decided that the officers should

knock out a window in the bedroom where they believed Gustafson was hiding. The officers threw a brick through Gustafson's bedroom window. As the officers pushed aside the blinds covering the window, they heard Gustafson yell "What the hell is going on?" The officers explained their presence and told Gustafson that they needed to talk to him about the incident with Michelle Dahl. The officers asked him to come out of his house several times, but Gustafson refused. Gustafson told the officers that he had weapons inside, but refused to specify what type of weapons. Gustafson told the officers that he would only talk to his friend Dennis Kuiper.

¶10 After being contacted by the officers, Kuiper arrived at Gustafson's house and talked to Gustafson through the window. Kuiper and Gustafson then talked on the front porch for about 30 minutes. Kuiper asked about the hole in the ceiling. Gustafson admitted that he shot the hole in the ceiling during his fight with Dahl. Finally, Gustafson agreed to go to the hospital and Kuiper drove him there. Officers arrested Gustafson for domestic abuse soon after he arrived at the hospital.

¶11 The Cascade County Attorney charged Gustafson with felony assault pursuant to § 45-5-202(2)(b), MCA (1997), partner/family member assault pursuant to § 45-5-206(1)(a), MCA (1997), and unlawful restraint pursuant to § 45-5-301, MCA (1997). Gustafson pled not guilty to the charges. Following a trial, the jury found Gustafson guilty of all three counts. The District Court sentenced Gustafson to ten years in the Montana State Prison with two years suspended for the assault charge and added a two-year consecutive sentence for the use of a weapon pursuant to § 46-18-221, MCA (1997). The District Court also imposed consecutive sentences for the other two offenses.

¶12 Before trial, Gustafson made a motion to exclude the testimony of Kuiper. Gustafson argued that testimony concerning the circumstances surrounding his arrest was irrelevant and unnecessarily prejudicial. The District Court denied the motion subject to relevancy, stating that "I'll have to wait and hear the testimony." However, the District Court invited Gustafson to "object anyplace that you think is necessary" during the trial. At trial, Gustafson's attorney did object to the testimony of Kuiper and Panagopolous as it related to Gustafson's conduct during his arrest. The District Court overruled these objections.

¶13 Gustafson now appeals from the District Court's evidentiary rulings. Gustafson further appeals imposition of an additional two-year consecutive sentence for the use of a weapon in the commission of a felony. We affirm Gustafson's conviction but strike the two- year sentence enhancement.

## STANDARD OF REVIEW

¶14 The standard of review for evidentiary rulings in a criminal case is whether the district court abused its discretion. *State v. Gollehon* (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263. The determination of whether evidence is relevant and admissible is left to the sound discretion of the trial court and will not be overturned absent a showing of an abuse of that discretion. *Gollehon*, 262 Mont. at 301, 864 P.2d at 1263.

¶15 We review a criminal sentence to determine whether the sentence is lawful. *State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937 ¶ 15.

## DISCUSSION

## ISSUE 1

¶16 Did the District Court err when it denied Gustafson's motions to exclude testimony regarding the events surrounding his arrest?

¶17 Gustafson contends that the District Court erred when it denied his motion to exclude testimony and when it overruled his objections to the introduction of evidence regarding the events surrounding his arrest. According to Gustafson, his conduct, more than 12 hours after the altercation with Dahl, had no relation to the charges against him. Therefore, testimony about the "armed standoff" between Gustafson and the officers at Gustafson's house was merely calculated to "provoke the jury's instinct to punish people who place law enforcement officers in such a dangerous position."

¶18 The State argues that the testimony in question was properly admitted as relevant corroborating evidence which was not overly prejudicial to Gustafson. The State contends that the testimony Gustafson sought to exclude was directly relevant to proving the felony assault charge. Moreover, the State notes that Panagopolous merely testified that he saw numerous weapons when he entered the house while Kuiper made no reference to weapons other than to say that he observed the hole in the ceiling and that Gustafson admitted shooting at the ceiling.

¶19 At trial, Gustafson conceded that his conduct toward Dahl constituted partner/family member assault and unlawful restraint. Therefore, the felony assault charge remained the only disputed charge at trial. In order to convict Gustafson of felony assault, the State had

the burden of proving that Gustafson purposely or knowingly caused Dahl reasonable apprehension of serious bodily injury by use of a weapon. *See* § 45-5-202(2)(b), MCA (1997). Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Rule 401, M.R.Evid. Because Kuiper corroborated Dahl's testimony that Gustafson assaulted her and fired his shotgun into the ceiling, his testimony was relevant to the felony assault charge.

¶20 Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Rule 403, M.R.Evid. Having thoroughly reviewed the record, we find no support for Gustafson's contention that Kuiper's testimony was overly prejudicial. Kuiper testified that Gustafson admitted shooting a hole in the ceiling with one of his shotguns. That testimony was relevant because it corroborated important elements of the victim's account. Consequently, we affirm the District Court's admission of Kuiper's testimony.

¶21 However, except for his testimony that he saw weapons in Gustafson's house, the testimony of Officer Panagopolous was not relevant because the circumstances surrounding Gustafson's arrest bore no relation to the incident between Dahl and Gustafson. We conclude that the testimony was not relevant pursuant to Rule 401, M.R. Evid., and was therefore inadmissable.

¶22 Nevertheless, even when a district court has abused its discretion by admitting irrelevant testimony, we will not set aside a conviction on that basis unless the error was prejudicial. *See State v. Lancione*, 1998 MT 84, ¶ 24, 288 Mont. 228, ¶ 24, 956 P.2d 1358, ¶ 24. When reviewing error for prejudice, we examine the totality of the circumstances in which the error occurred. *State v. Bower* (1992), 254 Mont. 1, 6, 833 P.2d 1106, 1109. We must determine, based on the record, whether the inadmissable evidence might have contributed to a conviction. *Bower*, 254 Mont. at 6, 833 P.2d at 1109.

¶23 In the context of the conduct alleged and admitted, we conclude that description of the circumstances surrounding Gustafson's arrest was not prejudicial. Notwithstanding Gustafson's claim to the contrary, Panagopolous did not make any reference to an "armed standoff" with police, nor did he otherwise unfairly provoke the jury's "instinct to punish." Gustafson admitted that he committed partner/family member assault and unlawful restraint and Dahl's testimony provided graphic detail to support the felony assault conviction. By comparison, the circumstances surrounding Gustafson's arrest were not

inflammatory. Accordingly, we conclude that the admission of Panagopolous' testimony was not reversible error.

## ISSUE 2

¶24 Did the District Court err when it enhanced Gustafson's sentence for use of a weapon?

¶25 Gustafson was convicted of and sentenced for felony assault based on his use of a weapon, and received an additional sentence for the use of a weapon during the commission of an offense pursuant to the weapon enhancement statute. The State concedes that our holding in *Guillaume* applies to Gustafson's case. This Court held in *Guillaume* that application of the weapon enhancement statute to a felony assault conviction violates the prohibition against double jeopardy found at Article II, Section 25 of the Montana Constitution. *State v. Guillaume*, 1999 MT 29, ¶ 16, 293 Mont. 224, ¶ 16, 975 P.2d 312, ¶ 16. Therefore, we conclude, as we did in *State v. Aguilar*, 1999 MT 159, ¶ 10, 295 Mont. 133, ¶ 10, 983 P.2d 345, ¶ 10, that the illegal sentence enhancement should be stricken and the judgment amended to that limited extent.

¶26 The judgment of the District Court is affirmed in part and reversed in part, and this case is remanded to the District Court for further proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART