JUSTICE TRIEWEILER
specially concurs.
¶34 I concur with the majority’s conclusion that if the defendant, Steven Porter, pointed a loaded rifle at people after consumption of a substantial amount of alcohol and had the capability of discharging it, he knowingly engaged in conduct that created a substantial risk of death or serious bodily injury to others in violation of § 45-5-207(1), MCA (1997). I also concur that, based on the evidence and reasonable inferences that could be drawn from the evidence, the State has proven the bare minimum necessary to establish those facts.
¶35 However, I do not agree with all that is said in the majority Opinion and think it is important to point out what this case is not about.
¶36 The issue raised by Porter on appeal is simply whether there was sufficient evidence for the jury to infer that he created a substantial risk of death or serious bodily injury to Randy and Joyce Hill and their children by pointing his rifle at them when, according to him, there was no evidence that the safety mechanism had been released or that he had his finger on the trigger. I agree that, based on his general behavior, his previous altercations, and his prior repeated discharge of his weapon, the jury could infer that the safety mechanism had been released and that he pointed the rifle at the Hill family with the capability of discharging it.
¶37 However, Porter did not commit criminal endangerment when he previously discharged his weapon and the distinctions between his conduct when he discharged his weapon and the examples in Justice Leaphart’s concurring Opinion in State v. Lambert (1996), 280 Mont. *160 231, 929 P.2d 846, are both misleading and irrelevant.
¶38 The majority Opinion makes a distinction between the innocent behavior described in Justice Leaphart’s example and Porter’s conduct by stating that Porter shot his rifle at night time while angry and intoxicated and that the discharge was illegal, in violation of § 61-8-369, MCA (1997), because Porter was either on or near the county road when he shot his rifle. I disagree that there is any distinction between Porter’s conduct and the innocent conduct described in Justice Leaphart’s Opinion that is relevant to the criminal endangerment statute or that Porter’s discharge of his weapon was the basis, or could have been the basis for, his criminal endangerment of the Hill family. All of the evidence was that Porter discharged his weapon away from the campground. More importantly, Porter’s discharge of his weapon was not the basis for his conviction. That is clear from the colloquy engaged in among counsel and the District Court while counsel’s motion for judgment as a matter of law was argued. For example, when counsel for Porter pointed out that there was no evidence that Porter ever fired his rifle toward the Hill family, the court stated:
The Court: Actually, no, it was-it was being fired the opposite way.
The only testimony before the court is that the gun was fired the opposite direction from the campers, and Willoughby was very clear about that, and there’s no physical evidence to contradict that. And there’s no evidence of the campers or anybody being on that side of the road, and the list of victims were all on this side of the road, so there’s no evidence that the shots that he fired-this is a matter of physical reality. He could have endangered the campers, right.
¶39 The District Court recognized that it was not the discharge of his weapon which endangered anyone but the fact that he told Randy Hill that he pointed the weapon at them. The court stated:
I think you may have a jury question there, if not for shooting, but if-because the only evidence was he didn’t shoot anywhere near the camp. And for the testimony to have things laid out, he’d have to sort of had to ricochet off of a satellite to get back to where the people were. But I guess if he did in fact-if there was testimony that he said that he was sighting in on people, under those circumstances, then I think you’ve got a jury question, so maybe we need to look at that portion of Hill’s testimony.
*161 I guess that my inclination at this point is to dismiss the assault charges and proceed with the endangerment charges. I think at least there’s some jury questions there. I think there may not be if he hadn’t made that statement about beading down on them, and I’m not sure that he limited who he said he beaded down on. The sad fact is that that was probably a lot of hype. Since it was in the middle of the night, maybe there was some people who thought he fired below. I’m not sure how much he can bead in the middle of the night by the campfire light, but by saying that, it’s the best evidence of what he was doing up there.
¶40 It is clear from the evidence and from the District Court’s characterization of the evidence when it was asked to decide whether there was sufficient evidence to support the charge of criminal endangerment for which Porter was convicted, that the conviction was based completely on Porter’s drunken braggadocio. It was based upon Porter’s statement that he pointed his rifle at campers in the middle of the night after substantial consumption of alcoholic beverages and after repeated prior discharge of his rifle. However, the prior discharge of his rifle did not form the basis for Porter’s conviction of criminal endangerment and the majority’s discussion at ¶¶ 16 and 17 simply confuses the issue in this case and our prior holding in Lambert.
¶41 Finally, after reviewing the testimony of the jurors who were called as witnesses regarding Porter’s appearance in the courtroom while wearing handcuffs or chains, I agree that prejudice has not been established. However, prejudice is practically impossible to establish. No juror is going to admit, after finding a defendant guilty of committing a felony which endangered others, that his or her verdict was influenced by the defendant’s appearance in the courtroom in handcuffs or chains. It is evident from our precedent and the prior cases of the 9th Circuit Court of Appeals that the resolution in each case is heavily dependent on its own facts. Because the result is never a forgone conclusion, it is important that law enforcement and prosecutors not jeopardize future convictions by carelessly bringing defendants in front of a jury, even briefly, while wearing handcuffs, leg irons, or other security devices which infer that the defendant is a dangerous individual, absent compelling security reasons. The standard under these circumstances is anything but clear, and the best policy would be to avoid the necessity of this issue being raised in the future.
¶42 For these reasons, I specially concur in the majority Opinion.