

DA 08-0361

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 139N

IN THE MATTER OF
C.J.S.,

     A Youth.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DJ-2007-31B
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Jim Wheelis, Chief Appellate Defender, Kelli S. Sather, Assistant
Appellate Defender, Helena, Montana

        For Appellee:

            Hon. Steve Bullock, Montana Attorney General, Jonathan M. Krauss,
Assistant Attorney General, Helena, Montana

            Marty Lambert, Gallatin County Attorney, Eric Kitzmiller, Deputy County
Attorney, Bozeman, Montana

                        Submitted on Briefs:  April 1, 2009

                                  Decided:  April 21, 2009

Filed:

            _____
                         Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 On February 19, 2008, C.S., a male youth now 15 years of age, was found to have committed the offense of felony assault in bench trial in the Eighteenth Judicial District Court, Gallatin County. That same day, C.S. had previously pled guilty to misdemeanor criminal mischief and misdemeanor theft. At the conclusion of the bench trial, C.S. was declared a delinquent youth and committed to the Montana Department of Corrections until he reaches the age of 18. C.S. now appeals the District Court's determination that he committed the offense of felony assault. We affirm.

¶3 At approximately 5:00 p.m. on September 9, 2007, C.S. and his then 12-year-old brother (K.S.) were walking home from a friend's house in Bozeman, Montana, where they had allegedly been smoking marijuana. As they were walking home, C.S. was playing with a switchblade knife which he had previously obtained. The switchblade had a blue handle and a blade of approximately 5 or 8 inches in length. According to the trial testimony of K.S., C.S. was walking beside him flipping the switchblade. At some point, C.S. allegedly swung the switchblade at K.S., cutting him on his right arm. K.S. jumped back and exclaimed "Ow!" and asked C.S. why he cut him. C.S. did not respond and the

2

two continued walking. According to K.S., the brothers did not discuss the incident further. When the brothers got home, they had a talk with their stepfather and he confiscated the switchblade from C.S.

¶4 Their parents talked with K.S. further about the matter and encouraged him to file a report with the police. K.S. went down the police station 5 days later and spoke with Officer Peggy Ash (Officer Ash) of the Bozeman Police Department. Officer Ash testified that she met with K.S. and noticed a superficial cut on his right arm, and spoke with him about the incident. Officer Ash also testified that K.S. stated that C.S. made threatening remarks to him before the incident. However, approximately one week prior to trial, K.S. spoke with the prosecutor and told him that he did not believe that C.S. cut him on purpose.

¶5 On September 17, 2008, Officer Dave Ferguson (Officer Ferguson) of the Bozeman Police Department received a call from C.S.'s mother reporting him as a runaway. Later that same day, she called in again to report she had just seen him in the Bozeman area. Officer Ferguson was able to subsequently locate C.S. and then transported him to the Law and Justice Center in Bozeman as part of an ungovernable youth investigation. Once Officer Ferguson had C.S. in custody, C.S.'s mother informed him of the investigation being conducted by Officer Ash. Officer Ferguson then spoke with Officer Ash about that investigation.

¶6 Officer Ferguson subsequently interviewed C.S. in the presence of his mother. After being advised of his rights, C.S. waived them and agreed to speak with Officer Ferguson. Initially, C.S. denied having anything to with the switchblade and his brother.

3

Eventually, he admitted to having the switchblade and that he had been walking with K.S. and flicking the knife open and scratching rust off the blade of the knife. He further stated that he had not overtly threatened K.S. with the knife, but had yelled out "Hey" to his brother, and that K.S. turned around at the same time he was flicking the switchblade, and it cut K.S. on the arm. After the interview, Officer Ferguson issued C.S. a citation for assault and ungovernable youth and released him.

¶7    C.S. was tried before Judge Mike Salvagni in a bench trial on February 19, 2008. K.S., Officer Ferguson, and Officer Ash all testified at trial on behalf of the State. At the close of the State's case-in-chief, C.S. moved for a directed verdict on the assault charge, arguing that the State had failed to present evidence to prove the elements of felony assault. The District Court denied the motion.

¶8    After closing arguments from both parties, the District Court issued its verdict from the bench. The District Court noted that while K.S. testified that he did not believe that his brother cut him on purpose, he did indicate to Officer Ash during their initial interview that C.S. had made threatening remarks to him prior to the incident. In spite of the fact that the switchblade had not been located and that there had been no forensic evidence presented with respect to the switchblade, the District Court found this point immaterial because C.S. had admitted to cutting K.S. with the switchblade.

¶9    The District Court then noted that in order to find that C.S. had committed the offense of felony assault, the State had to prove that he knowingly or purposely caused bodily injury to another with a weapon. The District Court concluded that there was no

4

question that C.S. had caused bodily injury with a weapon in this case, but that the real issue was whether such injury was caused knowingly or purposely.

¶10    The District Court observed that it could not "look into a person's head to see what the person was thinking at the particular moment of the act committed by that person," but must rely instead upon circumstantial evidence to infer C.S.'s mental state at the time.   The District Court then recounted the circumstantial evidence as to C.S.'s mental state.   First, the facts showed that C.S. was flipping the switchblade and that he "came down in a slashing movement and cut his brother."   Immediately before this incident, C.S. said "Hey" to K.S.  The District Court determined that this statement, made right before he cut K.S. with the switchblade, belied any notion that the act was accidental or that it was done in simple disregard of a risk.   Instead, these circumstances indicated to the District Court "that there was some awareness on the part of the youth about his conduct and that was the slashing movement of the–of his arm with the knife in his hand."

¶11    Furthermore, the District Court noted that when later confronted about the incident by the police, C.S. first denied, but then later admitted that he did cut K.S., although he maintained he did not overtly threaten him.   The District Court noted that an overt threat was not required for C.S. to possess the mental state of "knowingly."   Instead, "[t]here only needs to be the existence of awareness of the person's conduct or that the conduct— or he's aware that it's probable that his conduct would cause a result."   The District Court then concluded as follows:

5

The Court concludes—well, also when [K.S.] asked the youth why he cut him, he didn't respond. He never said anything. Now the Court doesn't know why [K.S.] told [the prosecutor] one thing last week and told Officer Ash something else when he was first confronted, but the fact of the matter here is that the youth said "Hey, [K.S.]," came down with a slashing movement and cut him. That's not an accident and that's not disregarding a risk.

The Court concludes, therefore, that the State has proved beyond a reasonable doubt that the youth's mental state at the time of the slashing movement with the knife was done knowingly. And, therefore, the Court finds that the State has proved beyond a reasonable doubt all of the elements of the offense of assault with a weapon. And the Court finds that the youth committed that crime on September 9, 2007, in Bozeman, Gallatin County.

¶12 C.S. now appeals the District Court's decision. C.S. argues that the District Court erred both in denying his motion to dismiss for insufficiency of the evidence at the close of the State's case-in-chief, and in finding that C.S. committed the offense of assault with a weapon. The crux of C.S.'s argument is that the District Court relied upon the wrong definition of "knowingly" when it found C.S. committed the offense of felony assault. The mental state of "knowingly" has the following possible definitions depending on the circumstances and the nature of the charged offense:

[A] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person's own conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is aware that it is highly probable that the result will be caused by the person's conduct. When knowledge of the existence of a particular fact is an element of an offense, knowledge is established if a person is aware of a high probability of its existence. Equivalent terms, such as "knowing" or "with knowledge", have the same meaning.

Section 45-2-101(35), MCA.

6

¶13 C.S. contends that the District Court erroneously relied upon a "disjunctive definition" of knowingly in convicting him, and that such error implicated his constitutional rights to due process. Relying heavily upon *State v. Lambert*, 280 Mont. 231, 929 P.2d 846 (1996), C.S. argues that in order to satisfy the element of "knowingly" for purposes of the felony assault statute, the State must show he was aware it was highly probable that his conduct would result in bodily injury to K.S. However, C.S. argues that merely proving he was aware of the conduct in which he was engaging—without proof that he was aware of a high probability that his conduct would result in bodily injury— was insufficient to establish the elements of assault with a weapon. In short, C.S. argues the District Court improperly relied upon a conduct-oriented definition of knowingly, as opposed to the required result-oriented definition, in both denying his motion to dismiss and finding that he committed felony assault.

¶14 On appeal, C.S. concedes that he did not properly present these objections to the District Court at the trial level. However, he argues that the District Court's error in this case implicates his constitutional rights, and thus a review of these issues is required under this Court's "plain error" doctrine because failure to do so would result in a miscarriage of justice.

¶15 Under the "plain error" doctrine, we may discretionarily review a claimed error that implicates a defendant's fundamental constitutional rights, even if a timely objection was not made at the trial level, where failing to review the claimed error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *State v. Cotterell*,

7

2008 MT 409, ¶ 44, 347 Mont. 231, 198 P.3d 254.  We use plain error only sparingly, on a case-by-case basis.  *Cotterell*, ¶ 44.

¶16    We decline to invoke plain error review.  C.S. has failed to establish plain error, nor has he demonstrated that a failure to review the District Court's application of the criminal statutes in this case would result in a miscarriage of justice, leave unsettled the fundamental fairness of the proceedings, or otherwise compromise the integrity of the judicial process.

¶17    We have determined to decide this case pursuant to Section 1, Paragraph 3(d)(v) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions.  It is manifest on the record before us that the District Court did not err in finding that C.S. committed felony assault.  Therefore, we affirm the District Court's decision.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS

8